STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-03-40 & 44

COMBINED MANAGEMENT, INC.,

      Petitioner/Cross Respondent

   v.

MAINE EMPLOYERS' MUTUAL
INSURANCE COMPANY,

      Respondent/Cross Petitioner

  and

SUPERINTENDENT OF INSURANCE
FOR THE STATE OF MAINE,

      Respondent

**DECISION ON APPEAL**

DONALD L. _____
L.H.____

AUG 4 2004

These matters come before the court for consolidated hearing on the petition of Combined Management, Inc. ("CMI") and the cross-petition of Maine Employers' Mutual Insurance Company ("MEMIC") pursuant to M.R. Civ. P. 80C and 24-A M.R.S.A. § 2330. The petition and cross-petition both concern a dispute over the proper amount of insurance premiums owed by CMI to its one-time insurer MEMIC and related issues. Both CMI and MEMIC disagree with the figure finally approved by the Superintendent of Insurance ("Superintendent") and there is a dispute concerning CMI's request for attorney's fees.

### Background

CMI is an "employee leasing" company that leased employees to 90 client companies. MEMIC is a domestic mutual workers' compensation insurance company of "last resort," established by 24-A M.R.S.A. § 3701 and required to insure any Maine employer applying for workers' compensation and employers' liability insurance. The

Maine Bureau of Insurance has promulgated rules governing workers' compensation insurance for employees of "employee leasing" companies. CMR 02-031-560. Proper application of this rule has been a key issue in this matter.

In December 2001, MEMIC issued 90 policies on behalf of CMI clients and was paid an advance quarterly premium of $250,721.75. CMI made no subsequent payments because it had obtained insurance from another carrier and MEMIC canceled CMI's coverage pro rata. After a final audit, MEMIC sent CMI a bill for an additional $82,859.25. CMI objected to this bill for a number of reasons, including a MEMIC decision not to provide credits to CMI clients for loss prevention programs that CMI claims their clients had in place. CMI also objected to MEMIC's decision to issue 90 separate policies instead of one policy.

CMI initiated administrative hearings before the Superintendent into MEMIC's underwriting in August 2002. A 10-month long adjudicatory proceeding, including three days of hearings ensued. The dispute between CMI and MEMIC proceeded with recalculations of the premium due which ranged from $82,859.25 owed by CMI to MEMIC, to $150,467 owed by CMI to MEMIC, to $35,940 owed by MEMIC to CMI. Faced with these variety of calculations, the Superintendent had the option of either approving or reversing MEMIC's assessment, but he was not allowed to independently underwrite and calculate the premium due himself.

Eventually, on January 31, 2003, the Superintendent issued a Decision and Order finding and concluding that "MEMIC performed insufficient underwriting of CMI's client lessee companies and willfully failed or refused to apply MEMIC's rating system to CMI's clients." (Binder 1, Tab 8, p. 15). The Superintendent also found that MEMIC willfully failed to apply credits to CMI's clients otherwise available to insureds under MEMIC's rating system. Finally, the Superintendent found that MEMIC had applied a

13.3% discount to CMI's initial annual premium and ordered that MEMIC was estopped from applying any other discount.

As a result, the Superintendent ordered MEMIC to pay a $3,000 civil penalty to the State and to undertake *de novo* underwriting for CMI's clients consistent with the Superintendent's decision and documentary evidence in the record and determine a final premium in accordance with the provisions of Rule 470.

On February 27, 2003, MEMIC filed its *de novo* underwriting report with the conclusion that CMI owed a final premium bill of $60,607. CMI responded that it was MEMIC which owed CMI $67,924.25. On June 6, 2003, the Superintendent issued a final Decision and Order affirming the $60,607 figure as determined by MEMIC, along with other provisions of the previous order. CMI filed a timely petition for review on July 3, 2003. MEMIC filed a timely cross-petition for review on July 7, 2003, which was consolidated with CMI's petition.

## Discussion

I.    **CMI - Discovery Ruling.**

CMI's first issue on appeal concerns the denial by the Superintendent of CMI's request for production of any reports or documents concerning loss control a visit by two MEMIC employees at CMI offices concerning loss control. CMI believes that such report would be relevant because it should have been used in the underwriting process by MEMIC, but was not. The Superintendent considered CMI's discovery request and in turn requested more information from MEMIC relative to these documents. As a result, the Superintendent denied the motion for production, but emphasized that sound underwriting technique would require gathering of information from all available sources so that any information acquired by the MEMIC inspectors should be used in MEMIC's *de novo* underwriting.

In analyzing an administrative procedural decision such as this discovery ruling by the Superintendent, the court must review to determine whether there was an abuse of discretion. After reviewing the record, the court finds that such abuse has not been proven. First, a discovery deadline of December 2, 2002, had been set by the Superintendent and CMI's motion was not filed until March 11, 2003 – four and a half months after the deadline. The Superintendent also reviewed the affidavit of Craig Reynolds concerning what marginal role the inspection played in the *de novo* underwriting. In light of both factors, the Superintendent was justified in denying the motion and no abuse of discretion is found.

## II.    CMI – Interpretation of CMR 02-031-470.

CMI's second issue concerns the proper application of the Insurance Bureau's regulation CMR 02-031-470 concerning the time limit on retroactive premiums. Section 4 states, "Time Limit – Except for policies issued subject to retrospective rating, the final premium shall be established not later than 120 days after the policy ends." Section 5 states, in part, "Limit on Subsequent Premium Adjustments – If the insurer has not established the final premium 120 days after the policy period ends, or any extension pursuant to section 7 below, the insurer is prohibited from billing or collecting any additional premium exceeding the latest billed premium immediately prior to the 120 day time limit." In other words, CMI argues that the Superintendent allowed MEMIC to violate the Bureau's rules. CMI says it should not be required to pay any additional premium because MEMIC failed to properly calculate the amount of this premium within the 120-day period.

In response, the Superintendent and MEMIC point out that a final premium audit was completed within the 120-day period even though the Superintendent

subsequently found that the calculation was in error and required MEMIC to provide a *de novo* calculation.

The court agrees with the Superintendent that he did not misinterpret Rule 470 for three reasons. First, as in *CWCO v. Superintendent*, 1997 ME 226, 703 A.2d 1258, the necessary action – here establishment of a final premium – did occur within the statutory time period, though final action did not occur until after that period due to the dispute over the action. Second, the proceedings overseen by the Superintendent were taken pursuant to 24-A M.R.S.A. § 2320 at the request of the petitioner, and those proceedings lasted 10 months despite the efforts of the Superintendent to resolve the issue. Third, "When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive on the Court, is accorded great deference and will be upheld unless the statute plainly compels a contrary result." *Maine Bankers Ass'n v. Bureau of Banking*, 684 A.2d 1304 (Me. 1996). The court finds no compelling contrary result in the statute.

## III. CMI Approval of *De Novo* Underwriting in Error.

CMI also challenges the Superintendent's ultimate decision of MEMIC's recalculation of the premium. Several disputes and disputed facts are noted by CMI, with the assertion that there were not enough findings of fact to support the Superintendent's conclusion. That conclusion was stated by the Superintendent as follows:

> Based on the totality of the record of this proceeding, the Superintendent finds that as of June 2, 2003, MEMIC has exercised due diligence and good faith in responding to the premium dispute of CMI in justifying the additional premium owed of $60,607.

Final Decision and Order, June 6, 2003, Binder 1, Tab 16, p. 3. The "totality of the record" is detailed and exhaustive, filling 15 binders. The Superintendent applied the

appropriate standard of reviewing the entire record and supported his final decision with 17 pages of findings and analysis. "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Board of Examiners of Psychologists*, 2000 ME 206, ¶ 9, 1762 A.2d 551, 555. Looking at the record as a whole, the Superintendent's decision was fair and reasonable.

## IV.   CMI – Penalty Provision.

CMI's fourth issue on appeal concerns the civil penalty of $3,000 which the Superintendent imposed for violations of the Insurance Code and Regulations. Binder 1, Tab 8, p. 16. The statute under which the penalty was assessed reads:

> 1.    CIVIL PENALTIES. A person or organization in violation of this chapter must be assessed by the superintendent a civil penalty not more than $1,000 for each violation, except that where a violation is willful, a civil penalty of not more than $10,000 must be assessed for each violation. These penalties may be in addition to any other penalty provided by law.

> 2.    SEPARATE VIOLATION. For purposes of this section, an insurer using a rate for which that insurer has failed to file the rate, supplementary rate information or supporting information as required by this subchapter, has committed a separate violation for each day that failure continues.

24-A M.R.S.A. § 2387. CMI argues that the $3,000 civil penalty violates the statute in that it appears to be one penalty for one violation, while the statute requires that a penalty be assessed with respect to each violation, Since there were 90 separate insureds, contends there must be least 90 penalties. In making this argument, CMI simply misreads both the Superintendent's decision and the statute. The order of the civil penalty was for "violations" and not for "a" single violation. Second, since the statute places a cap of $1,000 for each nonwillful violation, it is clear that the Superintendent did intend the penalty to cover more than one violation. Finally, the statute has no minimum penalty for an infraction so that the $3,000 civil penalty could

be for any number of violations including the 90 violations which CMI believes should have been found. The Superintendent committed no error of law or abuse of discretion in assessing the $3,000 civil penalty for all violations.

## V. CMI - Attorney's Fees.

Finally, CMI requests an award of its attorney's fees. CMI had previously made this request to the Superintendent, which was denied on the basis that there is no clear legislative language in the Insurance Code authorizing attorney's fees nor granting the Superintendent the authority to make such award. Binder 1, Tab 14. CMI now renews its request, suggesting that the Superintendent has "common law" authority to award fees. This argument is contrary to the prevailing American Rule that parties pay their own attorney's fees. In addition, the Law Court decisions cited by CMI can be distinguished in that they refer to judicial rather than administrative common law powers. The Superintendent did not err as a matter of law or abuse his discretion in declining to award attorney's fees for the administrative proceedings. Furthermore, this court will not award attorney's fees for the appeal because CMI has not prevailed in that appeal, assuming that the court has such common law authority.

## VI. MEMIC – Discount Figures.

Like CMI, MEMIC is unhappy with the final figure of $60,607, even though that figure is the result of its own underwriting. Part of MEMIC's argument concerns the decision by the Superintendent that during the *de novo* underwriting process, MEMIC would be held to using a 13.3% discount rate for any premium discount in its calculations. MEMIC argues that the Superintendent erred as a matter of law in this decision because he stated that MEMIC was "estopped" from using a different discount while the necessary elements for classic estoppel are not present.

The Superintendent responds by pointing out that MEMIC, during the course of the hearings, argued for the first time for application of the discount table to the CMI account based on individual lessee companies on a case-by-case basis. The Superintendent asserts that this would have further increased payments due to MEMIC and would have violated the 120-day time limit in CMR 02-031-470(5) for increasing premiums. The Superintendent's analysis is correct, though use of the word "estoppel" misstated the basis for his limitation. This was harmless error.

## VII. MEMIC – Rule 470 Interpretation.

MEMIC's second point on its cross-petition again goes to the disputed interpretations of Rule 470. Through the workings of the 120-day limit, the rule creates a *de facto* cap on premium adjustments. MEMIC asserts that the cap in this case should have been the $82,859.25 it originally billed CMI. However, by interpreting Rule 560 to grant each leasing company the rights of individual policyholders, the Superintendent ruled that the cap applied to each individual client account rather than the aggregate amount. The court concludes that the regulation could be interpreted either way, but MEMIC offers no authority beyond its own interpretation of the language. Under the circumstances, the court should defer to the agency's interpretation of their own regulation. *Maine Bankers Ass'n*, 684 A.2d at 1306 (citing *Centamore v. Dep't of Human Services*, 664 A.2d 369, 370 (Me. 1995)).

## VIII. MEMIC – Discrimination Finding.

While CMI argued in its petition that the Superintendent erred in not assessing a much higher civil penalty, MEMIC argues in its cross-petition that the Superintendent erred, as a matter of law, by assessing any penalty at all. MEMIC appears to argue from the statutory citations used by the Superintendent (Volume 1, Tab 8, p. 16) that the violations leading to a civil penalty in this case must be a violation with regard to

"rates" and that this was not a rating case. This argument ignores the fact that the Superintendent's full finding was that certain MEMIC action violated the Code and regulations ". . . including <u>but not limited to</u> Code provisions at 24-A M.R.S.A. §§ 2316, 2381-A, and 2382, and Insurance Regulation at Rule 470(2) and (3)." Other bases for the violations and penalty were set forth in the preceding findings of the Superintendent. However, even if limited to "rates," MEMIC's argument would fail since the violations ultimately do relate to its application of its rating system.

In conclusion, the court finds that the decisions of the Superintendent – his findings and conclusions – are supported by the evidence, do not contain errors of law, and represent no abuse of discretion.

The entry will be:

> Both the appeal and cross-appeal are DENIED; the Superintendent's Decision is AFFIRMED.

Dated: June ___25___, 2004

_____
S. Kirk Studstrup
Justice, Superior Court

Date Filed _____ **7/3/03** _____ **Kennebec** _____ Docket No. __AP03-40_____
                                    County

Action _____ 80C Appeal _____

# J. STUDSTRUP

Combined Management, Inc.                    ME Employers' Mutual Insurance Co.

                                       vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Thomas McNaboe, Esq.<br>13 Seacove Rd.<br>Cumerland Foreside, ME 04110 | Thomas C. Sturtevant, Jr., AAG<br>6 State House Station<br>Augusta, Maine 04333-0006<br>- |

| Date of Entry | |
|---|---|
| 7/3/03 | Petition for Review of Final Decision and Order, filed. s/T. McNaboe, Esq. |
| 7/6/03 | Case file notice issued to T. McNaboe, Esq. |
| 7/16/03 | Entry of Appearance and Statement of Positions, filed. s/Sturtevant, Jr., AAG |
| 8/4/03 | Certification of Record M.R.Civ.P. 80C, filed. s/Sturtevant, Jr., AAG<br>**(2 boxes in vault)** |
| 8/5/03 | Notice of briefing schedule mailed to attys of record. |
| 8/14/03 | Motion for Additional Evidence and/or Discovery, filed. s/McNaboe, Esq.<br>Request for hearing and Proposed Order, filed. |
| 8/25/03 | Respondent's Memorandum in Opposition to Combined Management, Inc.'s<br>Motion for Additional Evidence and/or Discovery, filed. s/Muir, Esq. |
| 9/4/03 | Respondent Superintendent's Memorandum in Opposition to Petitioner Combined<br>Management Inc.'s Motion for Additional Evidence and/or Discovery, filed<br>s/Sturtevant, Jr., AAG |
| 10/8/03 | Hearing held 10/7/03 on Motion for Additional Evidence with Studstrup, J., Presiding;<br>T. McNaboe, Esq. for Petitioner and Thomas Sturtevant, AAG for Respondent.<br>After hearing, matter <u>taken under advisement.</u><br>**No courtroom clerk and hearing not recorded.** |
| 12/5/03 | MOTION FOR ADDITIONAL EVIDENCE, Studstrup, J. (Dated 12/5/03)<br>After hearing, and review of applicable portions of the record, the motion<br>for discovery is DENIED.<br>Copies mailed to attys of record. |
| 12/31/03 | Copy of letter from attorney Muir to attorney McNaboe confirming the<br>agreement for the briefing schedule. |
| 1/12/04 | Brief of Petitioner, filed. s/T. McNaboe, Esq. |
| 1/12/04 | Maine Employers' mutual Insurance Company's Memorandum in Support<br>of Cross-Petition for Review of Final Decision and Order, filed.<br>s/A. Muir, Esq. |

Date Filed ___7/7/03___ ___Kennebec___ Docket No. ___AP03-44___
County

Action ___Petition for Review___
80C

# J. STUDSTRUP

Combined Management, Inc.    VS.   Maine Employers' Mutual Insurance Company

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Allan M. Muir, Esq.<br>One Monument Square<br>Portland, Maine 04101 | Thomas C. Sturtevant, Jr., AAG<br>6 State House Station<br>Augusta, Maine 04333-0006 |

| Date of Entry | |
|---|---|
| 7/7/03 | Maine Employers' Mutual Insurance Company's Cross-Petition for Review of Final Order and Decision, filed. s/Muir, Esq.<br>Maine Employers' Mutual Insurance Company's Motion to Consolidate, filed. s/Muir, Esq. |
| 7/16/03 | Entry of Appearance, Statement of Position and Response to Motion, filed. s/Sturtevant, Jr., AAG |
| 7/24/03 | MAINE EMPLOYERS' MUTUAL INSURANCE COMPANY'S MOTION TO CONSOLIDATE, Studstrup, J. (7/23/03)<br>Motion granted and Ordered consolidated with AP03-40.<br>Copies mailed to attys. of record. |
| 8/25/03 | Respondent's Memorandum in Opposition to Combined Management, Inc.'s Motion for Additional Evidence and/or Discovery, filed. s/Muir, Esq. |
| 9/4/03 | Respondent Superintendent's Memorandum in Opposition to Petitioner Combined Management, Inc.'s Motion for Additional Evidence and/or Discovery, filed. s/Sturtevant, AAG |
| 10/8/03 | Hearing held 10/7/03 on Motion for Additional Evidence with Studstrup, J. Presiding; Allan Muir, Esq. for Petitioner and Thomas Sturtevant, AAG for Respondent. After hearing, matter taken under advisement.<br>**No Courtroom clerk and hearing not recorded.** |
| 12/5/03 | MOTION FOR ADDITIONAL EVIDENCE, Studstrup, J. (dated 12/5/03)<br>After hearing, and review of applicable portions of the record, the motion for discovery is DENIED.<br>Copies mailed to attys of record. |
| 1/13/04 | Maine Employers' Mutual Insurance Company's Memorandum in Support of Cross-Petition for Review of Final Decision and Order with attachments, filed. s/S. Muir, Esq. |
| 2/9/04 | Maine Employers' Mutual Insurance Company's Response to Brief of Petitioner Combined Management, Inc., filed. s/Muir, Esq. |