2005 ME 54

**BATH IRON WORKS CORPORATION**

v.

**UNEMPLOYMENT INSURANCE COMMISSION.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Jan. 6, 2005.

Decided: April 14, 2005.

Roy T. Pierce, Tracey G. Burton, Preti Flaherty Beliveau Pachios & Haley, L.L.C., Portland, for plaintiff.

G. Steven Rowe, Atty. Gen., Pamela W. Waite, Elizabeth Wyman, Asst. Attys. Gen., Augusta, for defendant.

Panel: CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Bath Iron Works Corporation (BIW) appeals from a judgment entered in the Superior Court (Cumberland County, *Cole, J.*) affirming the decision of the Maine Unemployment Insurance Commission to grant unemployment benefits to Andy C. Fitzherbert. The Commission determined that Fitzherbert was not discharged for misconduct connected with his employment. BIW contends that the administrative findings are not supported by substantial evidence.[1] We vacate the judgment because the Commission's finding

---

1. Only BIW and the Commission participated in the appeal.

that BIW discharged Fitzherbert for the reason that he refused to comply with a last chance agreement is not supported by the evidence.[2]

## I. BACKGROUND

### A. Procedure

[¶ 2] BIW discharged Fitzherbert from his employment as a shipfitter. Fitzherbert applied for unemployment benefits, and BIW asserted that Fitzherbert was discharged for violating its rule prohibiting the use or possession of drugs. A deputy of the Commission found that Fitzherbert was not eligible for benefits because he had been discharged for misconduct connected with his employment. Fitzherbert appealed from the deputy's determination, and a hearing was held before an administrative hearing officer, who ruled that Fitzherbert was eligible for benefits because the evidence was not sufficient to show that Fitzherbert had engaged in misconduct. The hearing officer noted that BIW's witness at the hearing had no personal knowledge of the facts and presented only hearsay evidence.

[¶ 3] BIW appealed from the hearing officer's decision to the Commission, which held a hearing and took additional evidence. The Commission affirmed the hearing officer's decision and held that Fitzherbert was not discharged for misconduct.

### B. Definition of Misconduct

[¶ 4] An employee is not eligible for unemployment benefits when the employee has been discharged from employment for misconduct, which is defined in 26 M.R.S.A. § 1043(23) (Supp.2004) as:

a culpable breach of the employee's duties or obligations to the employer or a pattern of irresponsible behavior, which in either case manifests a disregard for a material interest of the employer....

A. The following acts or omissions are presumed to manifest a disregard for a material interest of the employer. If a culpable breach or a pattern of irresponsible behavior is shown, these actions or omissions constitute "misconduct" as defined in this subsection.... The acts or omissions included in the presumption are the following:

....

(2) Unreasonable violation of rules that are reasonably imposed and communicated and equitably enforced;

(3) Unreasonable violation of rules that should be inferred to exist from common knowledge or from the nature of the employment;

....

(7) Using illegal drugs or being under the influence of such drugs while on duty or when reporting to work[.]

26 M.R.S.A. § 1043(23).

### C. The Commission's Factual Findings

[¶ 5] The Commission found the following facts. Fitzherbert worked for BIW as a shipfitter for several years. On April 3, 2003, BIW received a report that marijuana smoke was coming from a small building. After surveillance and investigation, BIW supervisors entered the building on April 4, 2003, and determined that marijuana was present and that someone had been smoking marijuana. The supervisors also discovered drug paraphernalia. Five BIW employees were in the small building

---

**2.** We do not reach BIW's additional arguments that the Commission's decision is *ultra* *vires* and is preempted by federal law.

at the time, and Fitzherbert was one of them.[3]

[¶ 6] BIW had a policy prohibiting drug use or possession. The labor agreement between BIW and Fitzherbert's union provided that "[u]se, possession, distribution, sale or offering for sale narcotics, dangerous drugs (including marijuana), or alcoholic beverages on Company premises at any time" was an offense that "may result in discipline up to and including discharge." The Commission found that Fitzherbert violated BIW's rules, and it stated: "With respect to the presumptions contained in 26 M.R.S.A. § 1043(23)[(A)](2) and (3), the Commission finds that the claimant violated the employer's rules on April 4, 2003."

[¶ 7] The same day that the BIW supervisors discovered the five employees in the small building with marijuana smoke, BIW placed Fitzherbert on suspension because he refused to submit to a drug test, and later BIW terminated his employment. The labor union entered into negotiations with BIW for a last chance agreement, which was not uncommon. The union representative and a BIW representative signed an agreement covering Fitzherbert, and the Commission found that Fitzherbert and the union believed that a last chance agreement had been reached. The terms, as understood by Fitzherbert and the Union, were that Fitzherbert would submit to a drug test, and if he passed he would return to work on May 6. "[BIW], however, in its final draft of the proposed last chance agreement, changed the terms to include a probationary period," and Fitzherbert and the union did not agree to the changed term. Thus, no last chance agreement was finalized.

[¶ 8] The Commission found that after his suspension, Fitzherbert "did not engage in any culpable breach of his duties or obligations to his employer or a pattern of irresponsible behavior, which constituted a disregard for a material interest of the employer." The Commission found that BIW discharged Fitzherbert on May 5, the date on which the negotiations on the last chance agreement broke down. The Commission concluded that Fitzherbert "did not violate any rules at the time he was discharged"; instead he "was discharged because [BIW] no longer agreed with the terms of the last chance agreement it had negotiated previously."

[¶ 9] In short, the Commission found that Fitzherbert had violated BIW's drug policy and had been suspended, but that his actual discharge was the result of BIW's failure to comply with the last chance agreement it had negotiated.

## II. DISCUSSION

### A. Standard of Review

■ [¶ 10] When the Superior Court issues a judgment in its role as an intermediate appellate court, we review the administrative decision directly. *Me. Auto Test Equip. Co. v. Me. Unemployment Ins. Comm'n*, 679 A.2d 79, 80 (Me.1996). We vacate the administrative decision if the findings or conclusions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by bias or error of law; (5) unsupported by substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion. 5 M.R.S.A. § 11007(4)(C) (2002).

---

3. Substances found in the building at the time the five employees were present were later confirmed by a laboratory to be marijuana. However, the lab report was not received by BIW until several weeks after discharging Fitzherbert.

[¶ 11] At the Commission hearing, BIW had the burden to prove to the Commission that Fitzherbert's conduct was misconduct within the meaning of 26 M.R.S.A. § 1043(23). 5 C.M.R. 12 172 018–2 § 1 (1999). As the party with the burden of proof at the administrative hearing, BIW has the burden on appeal to demonstrate that the Commission was compelled, on the record before it, to find that Fitzherbert was discharged for misconduct. *Douglas v. Bd. of Trs. of the Me. State Ret. Sys.*, 669 A.2d 177, 179 (Me. 1996); *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551, 555 (holding that the party seeking to have the agency's decision vacated must demonstrate that no competent evidence supports it).

[¶ 12] Although the Commission found that Fitzherbert was not discharged for violating BIW's rules, it did find that he violated those rules on April 4. That finding is supported by substantial evidence in the record. Fitzherbert was in a small building at the workplace during working hours with four other people at the same time marijuana smoke, the odor of marijuana, and drug paraphernalia were present. There was evidence that the small building was locked from the inside. The five people, including Fitzherbert, refused to a take drug test. A reasonable inference from these facts is that Fitzherbert was using or possessing marijuana.

[¶ 13] Fitzherbert's conduct on April 4 can be viewed as an unreasonable violation of a reasonable rule, which, in turn, gives rise to the presumption of misconduct. *See* 26 M.R.S.A § 1043(23)(A)(2). There is no dispute that the rule prohibiting drug use and possession is a reasonable rule. *See Moore v. Me. Dep't of Manpower Affairs, Employment Sec. Comm'n*, 388 A.2d 516, 519 (Me.1978) (holding that an employee can be disqualified from receiving unemployment benefits only if the employer's standards are reasonable). Evidence showed that BIW was required, through its contracts with the Navy, to maintain a drug-free workplace and that this requirement was manifested in the union contract, which contained the rule against drug use and possession. Fitzherbert's conduct can also be viewed as the use or possession of an illegal drug during working hours, which, pursuant to 26 M.R.S.A § 1043(23)(A)(7), directly invokes the presumption of misconduct. Furthermore, the evidence is sufficient to support a finding that Fitzherbert's conduct on April 4, 2003, manifested a disregard for the material interests of BIW. *See id.* § 1043(23)(A).

[¶ 14] Despite its finding that Fitzherbert violated BIW's rules, the Commission concluded that he was not discharged for that violation. Instead, the Commission found that Fitzherbert's discharge was the result of BIW's refusal "to comply with its earlier negotiated agreement." However, the record does not support that conclusion. There is no substantial evidence in the record to support a finding that the discharge date was May 5, which is the date that BIW refused to finalize the last chance agreement. In fact, the record compels a finding that Fitzherbert was discharged on April 14. All the evidence in the record that references a discharge date refers to April 14 as the discharge date.[4] Indeed, in its brief

---

4. The BIW foreman, who notified Fitzherbert that he was discharged, testified that BIW processed the discharge on April 15 and that discharges were usually processed a day or two after the discharge occurred. An internal BIW document in the record shows the discharge date as April 14. Other documents in the record, such as letters between BIW's vice president for human resources and the president of the local union, refer to the date of

on appeal, the Commission concedes that April 14 was the discharge date.

[¶ 15] Because the record compels a finding that the date of discharge was April 14, the Commission's finding that the reason for Fitzherbert's discharge was the refusal of BIW to honor a previously negotiated last chance agreement is not supported by the administrative record. Although the date of discharge is not a significant fact in and of itself, the reason given by the Commission for the discharge is entwined with it. A discharge date of May 5 supports the Commission's conclusion that the discharge was related to BIW's refusal to comply with an agreement, while a discharge date of April 14 renders that conclusion impossible. April 14 was three weeks before the last chance agreement was negotiated. Indeed, the discharge catalyzed the negotiations. Thus, the inference drawn by the Commission that Fitzherbert was discharged because BIW refused to comply with a last chance agreement is not a reasonable one from the evidence in the record.

[¶ 16] Indeed, the administrative record compels the conclusion that the reason for Fitzherbert's discharge was his violation of BIW's rule prohibiting the use or possession of marijuana. When the erroneous May 5 discharge date is corrected to the April 14 discharge date, the only logical conclusion that can be drawn from the Commission's finding that Fitzherbert violated BIW's rules on April 4,[5] is that Fitzherbert was discharged for that misconduct. The failed negotiations are no longer a plausible reason in light of the April 14 date of discharge.

[¶ 17] Because the record compels a finding that Fitzherbert was discharged for misconduct, we must vacate the Superior Court's affirmance of the Commission's decision.

The entry is:

Judgment vacated. Case remanded to the Superior Court for entry of judgment vacating the Commission's decision and remanding to the Commission with instructions consistent with this opinion.

---

discharge as April 14. Furthermore, Fitzherbert first applied for unemployment benefits on April 19.

5. In its brief to this Court, the Commission takes the view that it found that BIW failed to prove that Fitzherbert violated BIW's drug rule because there was no evidence that Fitzherbert himself used or possessed marijuana. In spite of the statement in the Commission's decision that Fitzherbert violated BIW's rules, the Commission's brief states that the Commission did not find that Fitzherbert violated the drug rule. The brief contends that the Commission only found that Fitzherbert violated the rule requiring Fitzherbert to submit to a drug test. However, the Commission's decision is unambiguous and is not susceptible to the strained interpretation urged in its brief.