STATE OF MAINE
Cumberland, ss



SUPERIOR COURT
Civil Action
Docket No. AP-05-01

2006 FEB 24 A 8: 41

FAMILIES UNITED OF
WASHINGTON COUNTY,

Petitioner

v.

STATE OF MAINE UNEMPLOYMENT
INSURANCE COMMISSION

and PAMELA E. REARDON,

Respondents

**DECISION AND JUDGMENT**
(M.R.Civ.P. 80C)

Petitioner, Families United of Washington County Inc., has filed this appeal

pursuant to M.R.Civ.P. 80C from a decision of the Unemployment Insurance

Commission which found that the discharge from employment of Pamela Reardon was

not for misconduct and awarded her unemployment benefits.

## I. BACKGROUND

The Petitioner ("employer") employed Pamela Reardon as a family visitation

supervisor from May 2003 until her discharge on April 16, 2004. (Record at 92-93, 124).

Shortly after the employer hired Reardon, she certified that she received and read the

employer's Confidentiality Protection Policy ("CPP"). (R. at 63). The CPP states that

employees must protect the client's information in documents, on the phone and when

using a fax machine or the employer's computer. (R. at 67). Moreover, the Release of

Information policy provides that "all client identifiable information is confidential." (R.

1

at 66). A willful or negligent violation of the employer's policies or procedures is grounds for termination. (R. at 68).

Reardon testified at a Family Court hearing involving R... S... and his parents. (R. at 53, 103). The court sequestered the witnesses from the courtroom proceedings, but they waited in a public hallway where they were able to see each other. (R. at 51). About a week after the hearing, Reardon and a friend went to a restaurant where a waitress, who had cared for R... S..., recognized Reardon from the hearing. (R. at 52, 101-02, 111-13). The waitress initiated a conversation with Reardon regarding the hearing, volunteering information about the family. (R. at 101, 112). Reardon kept saying that she did not know anything and that she trusted the court made the correct decision. (R. at 102, 112-13). Reardon attempted to end the conversation, but the waitress persisted, approaching Reardon's table to wait on her. (R. at 102, 112-13). Reardon never mentioned the family's name and repeatedly said she did not know anything. Reardon did say she had visited the parents once. (R. at 101-102, 112-13).

A few days after Reardon and her friend were in the restaurant, R... S...'s mother called the employer and complained about Reardon speaking with the waitress. (R. at 30-32). Reardon's supervisor contacted the waitress to discuss what happened. (R. at 32). Thereafter, Reardon's supervisor called Reardon, explained R... S...'s mother's complaint and told Reardon to write out her version of the story. (R. at 49, 103). The supervisor told Reardon that her statement would be taken into account when the employer made a decision about her job. (R. at 49, 103). Reardon prepared her statement and when Reardon contacted her supervisor to notify her that she would be dropping it off, the supervisor told Reardon that the employer had decided to terminate her employment. (R. at 46, 49, 95, 105). The supervisor explained to Reardon several times that she violated the CPP by acknowledging that R... S... was one of the

2

employer's clients. (R. at 33, 46). Despite the explanations, Reardon did not understand how this violated the CPP. (R. at 34-35, 46).

Reardon applied for unemployment benefits. The deputy determined the employer discharged her for misconduct and denied benefits. (R. at 121, 124). Reardon appealed the decision to the Division of Administrative Hearings and the Division held a hearing. (R. at 81-115). The employer failed to appear at the hearing and the hearing officer issued a decision finding the Reardon's discharge was not for misconduct. (R. at 20, 78-80). In turn, the employer appealed to the Commission, which found that the employer presented good cause for failing to appear but held, after taking evidence, that Reardon's discharge was not for misconduct related to her work. (R. at 13, 15, 27). Subsequently, the Commission denied the employer's request for re-consideration and this appeal follows. (R. at 2-3, 7-10).

## II. DISCUSSION

### A. Standard of Review

The court reviews an appeal pursuant to M.R. Civ. P. 80C for abuse of discretion, errors of law or findings not supported by the evidence. *Centamore v. Dep't Human Services*, 664 A.2d 369, 370 (Me. 1995). The Superior Court may reverse or modify an administrative decision only if the findings or conclusions are unsupported by substantial evidence on the whole record. 5 M.R.S.A. § 11007(4)(C)(5).

When the appeal involves an agency's interpretation of a statute it administers, the court affords the agency's conclusion great deference and will be upheld unless the statute compels a contrary result. *Centramore*, 664 A.2d at 370-71. Thus, the court's review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record" and "inconsistent evidence will not render an

3

agency decision unsupported." *Imagineering, Inc. v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991); *Seider v. Bd. of Exam'r of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551, 555. The party seeking to vacate the agency's decision has the burden to demonstrate that no competent evidence supports it. *Bath Iron Works Corp. v. Unemployment Ins. Comm'n*, 2005 ME ¶ 11, 870 A.2d 580, 584 (citations omitted).

Here, the petitioner argues that the Commission erred in finding that Reardon's actions did not constitute misconduct, thus awarding her unemployment benefits. As such, the court's review is limited to "a determination of whether competent evidence supports the Commission's findings and whether the Commission applied the correct law to its findings." *Smith v. Me. Unemployment Ins. Comm'n*, 2002 Me. Super. LEXIS 239 *4 (Me. Super. Dec. 13, 2002) (citing *Forbes-Lilley v. Me. Unemployment Ins. Comm'n*, 643 A.2d 377, 378 (Me. 1994)).

## B. Misconduct

Generally, an individual discharged from employment is eligible for unemployment compensation subject to certain requirements. 26 M.R.S.A. § 1192. An exception to this general rule is if the employer discharges the individual for misconduct related to her work. *Id.* at § 1193(2). The Employment Security Law defines misconduct as:

> [A] culpable breach of the employee's duties or obligations to the employer or a pattern of irresponsible behavior, which in either case manifests a disregard for a material interest of the employer. This definition relates only to an employee's entitlement to benefits and does not preclude an employer from discharging an employee for actions that are not included in this definition of misconduct. A finding that an employee has not engaged in misconduct for the purposes of this chapter may not be used as evidence that the employer lacked justification for the discharge.

*Id.* at § 1043(23).

In *Moore v. Me. Dep't of Manpower Affairs*, 388 A.2d 516, 519 (Me. 1978) the Law

4

Court held that an employee's violation of an employer's rule does not constitute misconduct *per se* within the meaning of the statute. Rather, the Commission must employ a two-prong test in deciding whether the employee engaged in misconduct. *Forbes-Lilley v. Me. Unemployment Ins. Comm'n*, 643 A.2d 377, 379 (Me. 1994). The test requires the Commission to determine (1) whether the employer's rule or expectation was reasonable; and (2) whether the employee's conduct was, upon an objective standard, unreasonable under the circumstances of the case. *Id.* The Commission evaluates the objective standard based on the employee's behavior. *Id.* (citation omitted).

There is sufficient evidence on the record for the Commission to have found that the employer's confidentiality policy was reasonable. The employer maintained a rule prohibiting employees from unauthorized release of client information in documents, telephone conversations, in a fax or on while using a computer. The policy also proscribed any release of client identifiable information.

The employer provides a broad-range of assistance to families and individuals, including counseling and other mental health services, home-based support, parenting instruction and family intervention and monitoring court-ordered supervised visits. (R. at 92). By their nature, such services are intimate and private, requiring confidentiality. Thus, the policy is reasonable.

In its evaluation of Reardon's behavior, the Commission properly determined that she acted reasonably under the circumstances. Although the petitioner argues that Reardon knew or should have known that the CPP encompassed any and all client information, the confidentiality policy actually does not provide any guidance on handling a well-informed third party's initiation of a conversation regarding a client. The waitress knew about R... S... and Reardon attempted to evade conversation with

5

her, repeating that she did not know anything about the family. Indeed, Reardon never revealed the family's identity, which would be an obvious violation of the policy. Reardon attempted to comply with the employer's policy, as she understood it, by evading and attempting to end the conversation as well as not divulging client identifiable information. Her response, given the lack of guidance in the policy, was reasonable under the circumstances.

Moreover, as argued by the respondent, the employer never presented any evidence that they trained Reardon concerning a strict application of the CPP. Reardon's lack of understanding regarding the basis of her termination demonstrates the employer failed to enumerate all the nuances of the CPP. Reardon acted reasonably in deflecting the waitress's conversation in light of the employer's failure to detail the policy's fine points.

## C. Isolated Error of Judgment

According to the Employment Security Law, "misconduct may not be found solely on . . . an isolated error in judgment of a failure to perform satisfactory when the employee has made a good faith effort to perform the duties assigned." 26 M.R.S.A. § 1043(23)(B)(1). The Commission alternatively held that even assuming Reardon's conduct breached the employer's policy, the breach represented an isolated error in judgment. The record supports the Commission's conclusion.

Reardon made a good-faith effort to protect the confidentiality of the client. She attempted to end the conversation initiated by the waitress and never divulged the identity of the client. Reardon upheld the tenets of the confidentiality policy as she understood them; she did not engage in a blatant violation of the policy. Furthermore, the employer never reprimanded Reardon for any kind of violation of the confidentiality policy. (R. at 15). Therefore, the Commission properly concluded that if

6

Reardon violated the CPP, the breach represented an isolated error in judgment.

## III. DECISION AND JUDGMENT

The clerk will make the following entry as the Decision and Judgment of the court:

- The Decision of the Unemployment Insurance Commission is affirmed.

SO ORDERED.

Dated: February 23, 2006

Thomas E. Delahanty II
Justice, Superior Court

7

Date Filed __1-5-05__  __CUMBERLAND__  Docket No. __AP05-1__
                              County

Action __80C APPEAL__


FAMILIES UNITIED OF WASHINGTON COUNTY   MAINE UNEMPLOYMENT INSURANCE COMM.
INC.

                                    vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Linda McGill Esq.<br>~~PO BOX 7250~~<br>~~Portland ME 04112~~  C/O BERNSTEIN SHUR<br>SAWYER AND NELSON<br>100 Middle Street<br>P O Box 9729<br>Portland, Me 04104-5029 | Elizabeth Wyman, AAG<br>Dept. of the Attorney General<br>6 State House Station<br>Augusta, ME 04333-0006 |

| Date of Entry | |
|---|---|
| 2005<br>Jan. 7 | Received 1-5-05.<br>Summary Sheet filed.<br>Petition for Review of Governmental Agency Action filed. |
| Jan. 13 | Received 1-13-05.<br>Summons filed with certified mail return receipts (4) showing service upon Maine Unemployment Insurance Commission on 1-6-06 to David Igksias; upon Families United, Inc. on 1-6-05 to Michele Lenfesty; upon Dept. of the Attorney General on 1-6-05 by delivering to State Postal Center and upon Pamela Reardon on 1-10-05. |
| Jan. 18 | Received 1-18-05.<br>Correspondence from Elizabeth Wyman, AAG entering her appearance on behalf of Respondent filed. |
| Feb. 4, | Received 2-4-05<br>Letter from Linda D. McGill notifying her new address as Bernstein, Shur & Nelson, 100 Middle St. PO BOx 9729  Portland, Me 04104-5029. |
| "    " | Administrative record filed  by Elizabeth Wyman, AAG. |
| Feb. 7 | On 2-7-05.<br>Briefing schedule mailed.  Petitioner's brief due 3-16-05. |
| Mar. 16 | Received 3-16-05.<br>Petitioner's Brief in Support of Appeal of Agency Action filed. |
| March 31 | Received 3-31-05.<br>Respondent Maine Unemployment Insurance Commission's Brief filed. |
| Apr. 15 | Received 4-15-05.<br>Petitioner's reply brief filed. |

FAMILIES UNITED OF WASHINGTON COUNTY INC. vs. MAINE UNEMPLOY
MENT INS.

Docket No. __AP-05-01__

| Date of Entry | |
|---|---|
| 2005 | |
| Oct. 5 | On 10-04-05:<br>Hearing held on 80C Appeal.<br>Court takes matter under advisement.<br>Presiding, Justice Thomas Delahanty.<br>Linda McGill, Esq. present for Plaintiff.<br>Elizabeth Wyman, Esq. prsent for Defendant. |
| Mar 7 | Received 02-24-06:<br>Decision and Judgment filed. (Delahanty, J.).<br>The Cler5k will make the following entry as the Decision and Judgment of the court: The Decision of the Unemployment Insurance Commission is affirmed. SO ORDERED.<br>On 03-07-06 copies mailed to Elizabeth Wyman, AAG and Linda McGill, Esq. Ms. Deborah Firestone, The Donald Garbrecht Law Library, Goss Mimeograph and Loislaw.Com. |

