2000 ME 206

**Judith A. SEIDER**

v.

**BOARD OF EXAMINERS OF PSYCHOLOGISTS.**

Supreme Judicial Court of Maine.

Argued Nov. 7, 2000.
Decided Nov. 29, 2000.

Christopher C. Taintor (orally), Norman, Hanson & DeTroy, Portland, for plaintiff.

Andrew Ketterer, Attorney General, Judith M. Peters, Asst. Atty. Gen. (orally), Augusta, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Judith A. Seider appeals from the judgment of the Administrative Court (*Wheeler, J.*) affirming a decision and order of the Board of Examiners of Psychologists. Seider contends that the Board erred in numerous respects. Finding that the record contains substantial, competent evidence to support the conclusions of the Board, we affirm.

## I. CASE HISTORY

[¶ 2] Seider is a clinical psychologist who was licensed to practice in the State of Maine. On February 25, 1992, a mother consulted with Seider about the possible sexual abuse of her then four-year-old son. A short time later, after one observation session with the son, Seider concluded that the son had been sexually abused and prescribed a course of treatment. Seider continued the professional relationship with the son and the mother until April 21, 1992, when the mother terminated the relationship.

[¶ 3] In early 1992, the mother shared physical custody of her daughter with her former partner, the daughter's biological father.[1] In April 1992, Seider entered into a professional relationship with the daughter and the father and disclosed to the

---

1. The son's father is not involved in this action.

father that the son had been, and continued to be, sexually abused. Because of the alleged ongoing abuse, Seider expressed concerns that the daughter was also at risk. Seider entered into the relationship with the daughter and the father without the mother's knowledge or consent. The mother never authorized Seider to release the confidential information to the father.

[¶ 4] In late November 1992, the father—acting on Seider's recommendations—denied the mother further contact with the daughter. A custody dispute ensued between the mother and the father. In support of the father, Seider provided an affidavit for use in the custody dispute, disclosing confidential information concerning the mother. The mother never authorized Seider to disclose to any party involved in the custody dispute information pertaining to her, the son, or the daughter.

[¶ 5] Although she suspected that the children had been sexually abused, Seider also failed to immediately report her suspicions to the Department of Human Services as is mandated by the Maine statutory reporting requirements. *See* 22 M.R.S.A. §§ 4011(1) (1992 & Supp.1999–2000) (stating psychologist, who "knows or has reasonable cause to suspect that a child has been or is likely to be abused or neglected, . . . shall immediately report or cause a report to be made to the department"). Seider suspected that the son had been sexually abused as early as February 25, 1992, but did not report the suspected abuse to DHS until April 28, 1992. Additionally, though she suspected as early as April 1992 that the daughter was at risk of sexual abuse, Seider did not report her suspicions to DHS until DHS contacted her. DHS's involvement stemmed from a notice it received from Dr. Sumner Berkovich—the children's pediatrician—report-

ing the suspected sexual abuse of the daughter. Dr. Berkovich's call was triggered by a call Seider made to him to discuss the daughter. In the course of that conversation, Seider also disclosed to Dr. Berkovich that the mother herself had been sexually abused. The mother never authorized the disclosure.

[¶ 6] Because of these reports, DHS initiated an investigation. On January 12, 1993, it issued an investigative subpoena to Seider, requesting "[a]ny and all notes, records, and evaluations, regarding [the daughter, the father, the mother, and the son]." In response to the subpoena, Seider provided treatment records for the mother, the son, the father, and the daughter, together with a fifty-one page explanation, hereinafter referred to as "51–page explanation,"[2] divulging confidential information pertaining to the mother, the son, and the daughter.

[¶ 7] Based on the foregoing events, the mother filed a complaint with the Board, asserting that Seider had breached her obligations of confidentiality. The matter was heard by the Board over four days in the spring of 1995. In a decision and order dated July 14, 1995, the Board found 12 violations of the 1992 American Psychological Association Ethical Principles of Psychologists and Code of Conduct. These include four separate violations of Principle 5.02, two separate violations of Principle 5.03, and one violation each of Principles 1.14, 1.15, 1.17(c), 2.01(b), 2.04(b), and 7.03. In addition, the Board found three violations of the 1991 American Association of State Psychology Boards Code of Conduct. These include two violations of Sections III(E)(8) and III(I)(1), taken in conjunction, and one violation of Section III(E)(3). Upon Seider's petition for review,[3] the Administrative

---

**2.** Although designated as a report, the document is a fifty-one page self-serving explanation and justification for Seider's views and actions.

**3.** Seider filed a petition for review on April 4, 1997, almost two years after the Board's or-

der, but because the Board failed to include, in its order, written notice of Seider's appellate rights as required by 5 M.R.S.A. § 9061 (1989). Seider was allowed to advance her petition. *See Seider v. Bd. of Exam'rs of Psychologists*, 1998 ME 78, 710 A.2d 890.

Court affirmed the findings of the Board. This appeal followed.

## II. STANDARD OF REVIEW

[¶ 8] When a decision of an administrative agency is challenged on appeal, we review the action of the agency directly. *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261 (citing *Nyer v. Maine Unemployment Ins. Comm'n*, 601 A.2d 626, 627 (Me.1992)). "The standard of review is 'limited to whether the [governmental agency] abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record.'" *Davric Maine Corp. v. Maine Harness Racing Comm'n*, 1999 ME 99, ¶ 7, 732 A.2d 289, 293 (citation omitted); *see also CWCO, Inc.*, ¶ 6, 703 A.2d at 1261 (stating that, in reviewing an administrative agency decision, the issue before the court is not whether it would have reached the same conclusion as the agency, "but whether the record contains competent and substantial evidence that supports the result reached."); *Bischoff v. Bd. of Trustees*, 661 A.2d 167, 170 (Me.1995) (holding Law Court will not overturn conclusions supported by competent and substantial evidence).

[¶ 9] An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did. *CWCO, Inc.*, ¶ 6, 703 A.2d at 1261 (citing *Aviation Oil Co. v. Dep't of Envtl. Prot.*, 584 A.2d 611, 614 (Me.1990)). Inconsistent evidence will not render an agency decision unsupported. *Bischoff*, 661 A.2d at 170. The burden of proof rests with the party seeking to overturn the agency's decision. *Id.* That party must

prove that no competent evidence supports the Board's decision. *Id.*

## III. DISCUSSION

### A. Lost Testimonial Evidence

[¶ 10] As a result of an audiotape malfunction on the third and final day of hearing before the Board, a portion of the Board's questions to Seider and her responses and the testimony of witness Kenneth Altshuler were lost. Seider argues that the loss of such testimony means that the record is incomplete, making it impossible for us to meaningfully review the Board's findings, and, therefore, the Board's decision should be vacated.

[¶ 11] The record before us is composed of the full testimony of six witnesses, the complete direct and cross-examination of Seider, fifty pages of the Board's questions to Seider and her responses, four multi-paged, single-spaced submissions prepared by Seider for the Board, and 584 pages of documentary exhibits. Seider does not argue that the lost portion of the record materially affected her case, nor has she pointed to any harm or prejudice to her from the loss of Altshuler's testimony or from the loss of the Board's direct examination of her and her responses to its questions.[4] Contrary to Seider's assertion, the record—totalling 1288 pages in length—is composed of substantial, competent evidence sufficient to permit a meaningful review.

### B. Board's Finding of Violation of Principles 5.02 and 5.03 is Supported by Facts and Law

[¶ 12] The Board found that Seider's 51–page explanation "disclosed much more information than was needed to comply with the [DHS] subpoena" and that the information was disclosed "without an explicit release and, at times, not based on

---

4. Seider suggests that the lost testimony actually benefitted her. She offers, for instance, the testimony of Judy Potter, one of the father's attorneys in the underlying custody case, to support a proposition she makes. Seider then suggests that Potter's testimony must be accepted as authority for the proposition because the State can present no evidence to rebut it, having lost the testimony of Altshuler as a result of the audiotape malfunction.

adequate evaluation." Specifically, the Board found Seider's disclosure of such information constituted four violations of the confidentiality provisions—including Principle 5.02 of the APA Code,[5] which became effective on December 1, 1992, and Sections III(E)(1) & (12) of the 1991 AASPB Code[6] to the extent that any of the four confidentiality violations occurred prior to the effective date of the APA Code.

[¶ 13] Seider contends that the Board's findings that she violated Principles 5.02 and 5.03[7] are not supported by the facts or the law of this case. She argues that the Board's findings cannot stand because the APA Code does not define the circumstances that give rise to "confidentiality rights."

[¶ 14] Principle 5.02 compels psychologists to protect the confidentiality of those with whom they work or consult and provides that "confidentiality may be established by law, institutional rules, or profes-

sional or scientific relationship." APA Code of Conduct, Principle 5.02 (1992). The duty of maintaining confidentiality is established at the very start of a relationship. Principle 5.03(b) further prescribes that "[p]sychologists discuss confidential information obtained in clinical or consulting relationships, or evaluative data ... only for appropriate scientific or professional purposes and only with persons clearly concerned with such matters." APA Code of Conduct, Principle 5.03(b) (1992). By virtue of Principle 5.03(b), a psychologist should regard as confidential any information that he or she obtains in a professional relationship with another individual.[8]

[¶ 15] Together, Principles 5.02 and 5.03 make clear that any information a psychologist obtains in the course of a professional relationship with another individual is confidential and is, therefore, subject to all the protections of confidentiality available

---

**5.** Principle 5.02 provides:

> Psychologists have a primary obligation and take reasonable precautions to respect the confidentiality rights of those with whom they work or consult, recognizing that confidentiality may be established by law, institutional rules, or professional or scientific relationships.

APA Code of Conduct, Principle 5.02 (1992).

**6.** The relevant confidentiality provisions of the AASPB Code provide, in pertinent part:

> 1. *In general.* The psychologist shall safeguard the confidential information obtained in the course of practice, teaching, research, or other professional services. With the exceptions set forth below, the psychologist shall disclose confidential information to others only with the informed written consent of the client.
> ....
> 12. *Confidentiality after termination of professional relationship.* The psychologist shall continue to treat as confidential information regarding a client after the professional relationship between the psychologist and the client has ceased.

AASPB Code of Conduct, Sections III(E)(1) & (12) (1991).

**7.** Principle 5.03 provides:

> (a) In order to minimize intrusions on privacy, psychologists include in written

and oral reports, consultations, and the like, only information germane to the purpose for which the communication is made.

> (b) Psychologists discuss confidential information obtained in clinical or consulting relationships, or evaluative data concerning patients, individual or organizational clients, students, research participants, supervisees, and employees, only for appropriate scientific or professional purposes and only with persons clearly concerned with such matters.

APA Code of Conduct, Section 5.03 (1992).

**8.** Principle 5.01(a) requires "[p]sychologists [to] discuss with persons ... with whom they establish a scientific or professional relationship ... (1) the relevant limitations on confidentiality, including limitations where applicable in group, marital, and family therapy ..., and (2) the foreseeable uses of the information generated through their services." APA Code of Conduct, Principle 5.01(a)(1) & (2) (1992). There is no record evidence showing there were any limitations on the parties' confidentiality privileges. It must be presumed, therefore, that any and all discussions in the parties' consultations with Seider are confidential and are subject to all the protections of confidentiality available within the law.

within the bounds of the law. The determinative factor, then, becomes whether Seider entered into a professional relationship with the mother and the son. With respect to the son, there is no dispute. Seider readily admits that the son was her client.

[¶ 16] Seider claims the mother was not her client but, rather, was merely an adjunct to her consultation with the son. The Board, on the other hand, asserts that Seider's relationship with the mother rose to the level of a professional relationship, entitling the mother to confidentiality privileges. The record demonstrates that Seider elicited personal information from the mother and spoke to the mother about the mother's personal history, her background, her own sexual abuse, and her treatment history. There is substantial, competent evidence in the record, therefore, that Seider established a professional relationship with the mother. The mother is entitled to confidentiality privileges.

C. Confidentiality Privilege Not Lost by Disclosure

[¶ 17] Seider argues that, pursuant to M.R. Evid. 503,[9] the information in controversy lost its confidential character because the mother had disclosed much of the same information to the father and to Dr. Berkovich prior to meeting with Seid-er. Generally, the scope of the patient-psychologist privilege is limited to "confidential communications." *Halacy v. Steen,* 670 A.2d 1371, 1376 (Me.1996). M.R. Evid. 503 defines a "confidential communication" as follows:

(4) A communication is "confidential" if not intended to be disclosed to third persons other than those present to further the interest of the patient in the consultation, examination, or interview, or persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the physician or psychotherapist, including members of the patient's family.

M.R. Evid. 503(a)(4). Seider's reliance on Rule 503 is misplaced. The privilege under Rule 503 belongs to the mother and speaks to the mother's right to "refuse to disclose and prevent any other person from disclosing confidential information." M.R. Evid. 503(b). It does not give Seider any affirmative rights, other than to claim the privilege on behalf of, not against, the mother. *See* M.R. Evid. 503(d) (stating "[t]he person who was the physician or psychotherapist at the time of the communication is presumed to have authority to claim the privilege but only *on behalf* of

---

9. M.R. Evid. 503(b) provides the general rule for a patient's confidentiality privilege. It states that:

A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of the patient's physical, mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

M.R. Evid. 503(b). There are exceptions to this general rule, however. M.R. Evid. 503(e), provides, in relevant part:

(2) *Examination by Order of the Court.* Except as otherwise provided in subdivision (c), if the court orders an examination of the physical, mental or emotional condition

of a patient, whether a party or a witness, communications made in the course thereof are not privileged under this rule with respect to the particular purpose for which the examination is ordered unless the court orders otherwise.

(3) *Condition an Element of the Claim or Defense.* There is no privilege under this rule as to communications relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which the condition of the patient is an element of the claim or defense of the patient, or of any party claiming, through or under the patient or because of the patient's condition, or claiming as a beneficiary of the patient, through a contract to which the patient is or was a party, or after the patient's death, in any proceeding in which any party puts the condition in issue.

M.R. Evid. 503(e)(2) & (3).

the patient" (emphasis added)). Even if the mother waived her confidentiality privilege, Rule 503 does not authorize Seider to disclose, without reservation and without consent, confidential information relating to the mother and the son. It is irrelevant, therefore, whether the mother communicated the same information to other persons.

[¶ 18] Seider's rights and duties regarding confidentiality are prescribed by the psychologist codes of conduct, including Principles 5.01–5.11 of the APA Code and by Section III(E) of the AASPB Code. These codes ethically obligate Seider to treat any information, once gained through a professional relationship, as confidential regardless of who else knows it. Section III(E)(12) of the AASPB Code, moreover, provides that these obligations continue even after the professional relationship ends. Seider, consequently, violated her professional codes of conduct when she voluntarily, and without the mother's consent, disclosed to the father, the father's attorney, and Dr. Berkovich confidential information obtained during her professional relationship with the mother.

D. Seider Was Not Permitted By Law To Voluntarily Disclose Confidential Information Because of the Pending Child Custody Litigation

■■■ [¶ 19] In a custody dispute between the mother and the father, Seider prepared an affidavit divulging, without the mother's consent, confidential information pertaining to the mother and the son. Seider asserts, pursuant to M.R. Evid. 503, that "the confidentiality inher[ent] in the psychotherapist-patient relationship disappears when the subject of that relationship is put 'in issue' in a legal proceeding," and that Principle 5.05[10] of the APA Code allows for the disclosure of confidential information, without consent, "as mandated by law, or where permitted for a valid purpose." Seider asserts that the custody litigation represents one such valid purpose contemplated by Principle 5.05 and that she was, therefore, permitted to disclose confidential information without liability.

[¶ 20] Seider's reliance on M.R. Evid. 503(e)(3) (see *supra* note 9) is misplaced. "Subsection (e)(3) excepts from communications relevant to a condition that is an element of a claim or defense of the patient. It is based on principles of waiver. It does not allow a party to seek damages with reference to a physical or mental condition and at the same time suppress evidence relevant to that condition." RICHARD H. FIELD & PETER L. MURRAY, MAINE EVIDENCE, § 503.4 (2000 ed.). The operative focus in Rule 503(e)(3) is on the patient/client. Whether or not a patient/client waives his or her privilege, a psychologist cannot rely upon this rule to volunteer that patient/client's confidential information without reservations, as Seider did here. The child custody litigation, therefore, did not permit Seider to volunteer confidential information obtained in a professional relationship with the mother.

E. Seider's 51–page Explanation Violated Principle 5.02

■■■ [¶ 21] The Board found that Seider violated Principle 5.02 (see *supra* note 5) when she gave "confidential information to DHS without a release and beyond [sic] the scope of the investigative subpoena." The investigative subpoena asked for

---

10. Principle 5.05 provides:

    (a) Psychologists disclose confidential information without the consent of the individual only as mandated by law, or where permitted by law for a valid purpose, such as (1) to provide needed professional services to the patient or the individual or organizational client, (2) to obtain appropriate professional consultations, (3) to protect the patient or client or others from harm, or (4) to obtain payment for services, in which instance disclosure is limited to the minimum that is necessary to achieve the purpose.

    (b) Psychologists also may disclose confidential information with the appropriate consent of the patient or the individual or organizational client (or of another legally authorized person on behalf of the patient or client), unless prohibited by law.

APA Code of Conduct, Principle 5.05 (1992).

"[a]ny and all notes, records, reports, and evaluations, regarding [the daughter, the father, the mother, and the son]."

[¶ 22] Seider argues that Principle 5.05 (see *supra* note 10) allows psychologists to disclose confidential information when "mandated by law." She contends that "22 M.R.S.A. §§ 4011 and 4012 [see *infra* notes 19 and 22] required her to make a report setting forth 'any ... information ... [she] believe[d] may be helpful' to the Department's investigation." Seider argues that these provisions immunize her from liability for her 51–page explanation and, accordingly, the Board erred in finding that she violated Section 5.02 with respect to this report.

[¶ 23] By creating the 51–page explanation, in which she divulged detailed evaluations of the daughter, made clinical diagnoses regarding the mother and the son, and offered extensive recommendations regarding how DHS should proceed with its investigation, Seider went over and beyond what was asked for in the DHS subpoena. Contrary to her assertions, therefore, there is competent and substantial evidence in the record to support the result reached by the Board. The Board did not err in finding that Seider violated Principle 5.02 of the APA Code.

F. The record contains competent and substantial evidence that Seider violated Principles 1.14, 1.15, 5.03, 2.01(b) and 2.04(b)

[¶ 24] Seider contends that the Board exceeded its authority in finding that she violated APA Code Principles 1.14, 1.15, 5.03, 2.01(b), and 5.03. She charges that, insofar as they are based on the Board's evaluation of her 51–page explanation, the Board's findings on these Principles are overinclusive and lack factual support. Contrary to Seider's assertions, the bases for the Board's findings are not solely restricted to Seider's 51–page explanation; rather, the findings will be upheld if, on the basis of the entire record, the board could have fairly and reasonably found the facts as it did. *See CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261 (stating that administrative decision will be sustained if, on basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did). There is competent and substantial evidence in the record taken as a whole to support the Board's findings with respect to these violations.

*i. Principle 1.14*

[¶ 25] The Board found that Seider violated Section 1.14[11] because she made conclusions about the mother on minimal data, disclosed to others such conclusions, and continued to maintain her position without adequate reservation. There is competent evidence to support the Board's findings. In her affidavit, her 51–page explanation, and her testimony at the custody hearing, Seider asserted opinions without limitations as to the certainty of her conclusions. She also rendered diagnoses of the mother based on only three meetings and without formal assessments.

*ii. Principle 1.15*

[¶ 26] The Board found that Seider violated Section 1.15[12] because she failed to guard against the misuse of her work by the litigants in the custody action, took sides in the custody action without sufficient data, and failed to obtain releases. Seider prepared an affidavit that contained substantial confidential information

11. Principle 1.14 provides:
Psychologists take reasonable steps to avoid harming their patients or clients, research participants, students, and others with whom they work, and to minimize harm where it is foreseeable and unavoidable.
APA Code of Conduct, Principle 1.14 (1992).

12. Principle 1.15 provides:

Because psychologists' scientific and professional judgments and actions may affect the lives of others, they are alert to and guard against personal, financial, social, organizational, or political factors that might lead to misuse of their influence.
APA Code of Conduct, Principle 1.15 (1992).

about one client (the mother) and gave it to another client (the father) to be used in a contentious custody suit. There is, therefore, competent record evidence to support the Board's finding of a violation of Section 1.15.

### iii. Principle 5.03

▪ [¶ 27] The Board found that Seider twice violated Principle 5.03 (see *supra* note 6). First, she failed, in her affidavit and in her 51–page explanation, to minimize intrusions on the mother's privacy and provided information not germane to the purpose for which the communication was made. Second, the Board found that Seider violated Section 5.03 because she discussed confidential information with persons who were not persons clearly concerned with the limited relationship between Seider and the mother.

[¶ 28] The record evidence demonstrates that Seider prepared an affidavit divulging confidential information pertaining to the mother and the son without obtaining the mother's release or consent. It also shows that she gave the affidavit to the father and his attorney, persons who were unconcerned with the relationship between Seider and the mother. The record evidence further shows that Seider's 51–page explanation contained information that was not germane to the purpose for which it was created. The record, therefore, contains substantial, competent evidence to support the Board's finding that Seider violated Principle 5.03.

13. Principle 2.01(b) states, in relevant part:
    (b) Psychologists' assessments, recommendations, reports, and psychological diagnostic or evaluative statements are based on information and techniques (including personal interviews of the individual when appropriate) sufficient to provide appropriate substantiation for their findings.
    APA Code of Conduct, Principle 2.01(b) (1992).

14. Principle 2.04(b) provides:
    (b) Psychologists recognize limits to the certainty with which diagnosis, judgments,

### iv. Principle 2.01(b)

▪ [¶ 29] The Board also found that Seider violated Principle 2.01(b) [13] because she made assessments and diagnostic or evaluative statements based on insufficient data and evaluation in her 51–page explanation. Contrary to Seider's assertions, there is substantial, competent evidence in the record to support the Board's conclusions that Seider, by creating her 51–page explanation, violated Section 2.01(b).

### v. Principle 2.04(b)

▪ [¶ 30] Finally, Seider was found to have violated Principle 2.04(b) [14] because she failed to limit, or appreciate the uncertainty of, her diagnoses. Principle 2.04(b) instructs the psychologist to "recognize limits to the certainty with which diagnoses, judgments, or predictions can be made about individuals." Seider did not recognize the limits to the certainty of her diagnoses in her affidavit, her testimony, in her 51–page explanation. Rather, Seider stated her propositions in absolutes, without reservation. DHS's finding that the claims of sexual abuse of the daughter was unsubstantiated highlights the problems associated with Seider's failure to appreciate the uncertainty of her diagnoses. There is substantial and competent record evidence to support the Board's finding that Seider violated Section 2.04(b).

### G. The Board's Interpretation of Principle 1.17(c) is Sound

▪ [¶ 31] Seider argues that the Board's finding that she violated Principle 1.17(c) [15] was erroneous because the record

or predictions can be made about individuals.
APA Code of Conduct, Principle 2.04(b) (1992).

15. Principle 1.17 provides, in relevant part, that:
    (c) If a psychologist finds that, due to unforeseen factors, a potentially harmful multiple relationship has arisen, the psychologist attempts to resolve it with due regard for the best interests of the affected person and maximal compliance with the Ethics Code.
    APA Code of Conduct, Section 1.17(c).

does not contain evidence of "multiple relationships" within the meaning of Principle 1.17(c). Seider contends that "Principle 1.17(c) does not address situations where psychologists have professional relationships with 'multiple' persons who happen to be related in some way." Rather, she argues that the provision "addresses situations where a psychologist simultaneously has (1) a therapeutic or consultive relationship with a patient or client, and (2) a collateral relationship—'personal, scientific, professional [or] financial,' among others—with the same person."

[¶ 32] Seider's interpretation of the regulation is overly restrictive. The Board found that Seider violated Principle 1.17(c) because of her multiple conflicting relationships with the mother, the son, the daughter, and the father. We give "considerable deference to an agency's interpretation of its own internal rules, regulations, and procedures and will not set it aside, unless the rule or regulation plainly compels a contrary result." *Downeast Energy Corp. v. Fund Ins. Review Bd.*, 2000 ME 151, ¶ 13, 756 A.2d 948, 951. The Board's interpretation of Principle 1.17(c) is sound.

**H. The Record Evidence Supports Findings of Violations of Principle 7.03 and Section III(E)(3)**

[¶ 33] The Board found that Seider violated Principle 7.03 [16] because (1) she failed to clarify her roles at the commencement of the relationships or thereafter and (2) she failed to obtain releases from the mother and the son. Seider's failure to clarify her roles was also the basis of the Board's finding that she violated Section III(E)(3) of the 1991 AASPB Code.

[¶ 34] Seider argues that the Board exceeded its authority by retroactively applying Principle 7.03 and Section III(E)(3) [17] because neither rule was in effect when the alleged conduct occurred. Seider further asserts that a violation of Section 7.03 could not have been found unless the Board determined that Seider "had 'multiple and potentially conflicting roles' in a forensic matter." She contends that there is no evidence to show that any such conflict existed.

[¶ 35] Contrary to Seider's contentions, there is substantial, competent evidence that she failed to clarify her roles with the various parties subsequent to December 1, 1992, when the APA Code took effect. She aligned herself, for example, with the father in his parental rights dispute, preparing an affidavit—dated December 9, 1992—that disclosed confidential information about the mother and the son without obtaining appropriate releases. Seider also failed to clarify for the mother what Seider's role was in this multiple relationship with the mother and the father. In addition, she never clarified to the mother what the mother's confidentiality rights were.

---

**16.** Principle 7.03 provides, in full:

> In most circumstances, psychologists avoid performing multiple and potentially conflicting roles in forensic matters. When psychologists may be called on to serve in more than one role in a legal proceeding— for example, as consultant or expert for one party or for the court and as a fact witness—they clarify role expectations and the extent of confidentiality in advance to the extent feasible, and thereafter as changes occur, in order to avoid compromising their professional judgment and objectivity and in order to avoid misleading others regarding their role.

APA Code of Conduct, Principle 7.03 (1992).

**17.** Section III(E)(3) states, in full:

> *3. Services involving more than one interested party.* In a situation in which more than one party has an appropriate interest in the professional services rendered by the psychologist to a client or clients, the psychologist shall, to the extent possible, clarify to all parties prior to rendering the services the dimensions of confidentiality and professional responsibility that shall pertain in the rendering of services. Such clarification is specifically indicated, among other circumstances, when the client is an organization.

AASPB Code of Conduct, Section III(E)(3) (1991).

[¶ 36] From December 1992 to early 1993, Seider also performed evaluations on the daughter for sexual abuse and provided those evaluations to the District Court and to DHS for use in the determination of parental rights. In so doing, Seider was acting as the daughter's advocate while also serving as the child's therapist. Seider never clarified this role to the father, nor did she reveal to the father that his interests and those of the daughter may conflict. In addition, Seider continued to see the daughter without informing the mother of such contacts. Contrary to Seider's assertions, therefore, there is competent evidence in the record to support the Board's finding that she violated Principle 7.03 and Section III(E)(3).

### I. Failure to Report "Immediately"

[¶ 37] The Board also concluded that Seider twice violated Sections III(E)(8) and III(I)(1) of the AASPB Code.[18] The Board first found that Seider violated these provisions by failing to report to DHS her suspicions of the sexual abuse of the children "immediately," as prescribed by 22 M.R.S.A. § 4012.[19] It also found that she violated the provisions by neither having a sufficient knowledge of the reporting requirements, nor of the DHS reporting procedures. Seider does not challenge these findings on appeal. A failure to brief these claims constitutes an abandonment of the appeal on those claims. *Kezer v. Mark Stimson Assoc.*, 1999 ME 184, ¶ 9, 742 A.2d 898, 901 (citing *Aseptic Packaging Council v. State*, 637 A.2d 457, 462–63 (Me.1994)). The Board's conclusion that she violated sections III(E)(8) and III(I)(1) must, therefore, stand. *Id.*

### J. Failure To Preserve Claims For Appeal

[¶ 38] The remainder of Seider's contentions are brought for the first time on appeal. She argues, for instance, that the Board lacked the authority to discipline her for the contents of her 51–page explanation because 22 M.R.S.A. §§ 4014[20] and

---

18. Section III of the AASPB Code states, in relevant part:

**E. PROTECTING CONFIDENTIALITY OF CLIENTS**

8. *Reporting of abuse of children and vulnerable adults.* The psychologist shall be familiar with any relevant law concerning the reporting of abuse of children and vulnerable adults, and shall comply with such laws.

. . . .

**I. VIOLATIONS OF LAW**

1. *Violation of applicable statutes.* The psychologist shall not violate any applicable statute or administrative rule regulating the practice of psychology.

AASPB Code of Conduct, Sections III(E)(8) & (I)(1) (1991).

19. Section 4012 provides, in full:

**1. Immediate report.** Reports regarding abuse or neglect shall be made *immediately* by telephone to the department and shall be followed by a written report within 48 hours if requested by the department.

**2. Information required.** The reports shall include the following information if within the knowledge of the person reporting:

A. The name and address of the child and the persons responsible for his care or custody;

B. The child's age and sex;

C. The nature and extent of abuse or neglect, including a description of injuries and any explanation given for them;

D. A description of sexual abuse or exploitation;

E. Family composition and evidence of prior abuse or neglect of the child or his siblings;

F. The source of the report, the person making the report, his occupation and where he can be contacted;

G. The actions taken by the reporting source, including a description of photographs or × rays taken; and

H. Any other information that the person making the report believes may be helpful.

22 M.R.S.A. § 4012 (1992) (emphasis added).

20. Section 4014 provides, in pertinent part:

**1. Reporting and proceedings.** A person ... participating in good faith in reporting under this subchapter or participating in a related child protection investigation or proceeding, including, but not limited to, a multidisciplinary team, out-of-home abuse

4021 [21]—read in tandem with §§ 4011 [22] and 4012(2)(H) (see *supra* note 19)—immunize her from liability for the content, or substance, of her report. Seider also asserts that Principle 1.17(c) was not in force at the time of the conduct in question, and, consequently, she could not be deemed to have violated that provision.

[¶ 39] Parties seeking a review of a final agency action are expected to raise any objections they have before the agency in order to preserve these issues for appeal. *New England Whitewater Ctr. v. Dep't of Inland Fisheries and Wildlife*, 550 A.2d 56, 58 (Me.1988). This rule, requiring that an issue be raised before the administrative agency in order for it to be preserved on appeal, is not specifically based on a need for factfinding. *Id.* at 60. Instead, it is based on "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants, ... and ensures that the agency and not the courts has the first opportunity to pass on the claims of the litigants." *Id.* Consequently, "[i]ssues not raised at the administrative level are deemed unpreserved for appellate review." *Id.* (citations omitted). Having failed to raise these issues before the Administrative Board, Seider is barred from doing so now.

The entry is:

Judgment affirmed.

---

investigating team or other investigating or treatment team, is immune from any criminal or civil liability for the act of reporting or participating in the investigation or proceeding. Good faith does not include instances when a false report is made and the person knows the report is false. Nothing in this section may be construed to bar criminal or civil action regarding perjury or regarding the abuse or neglect which led to a report, investigation or proceeding.
22 M.R.S.A. § 4014(1) (1992).

21. Section 4021 provides, in relevant part, that "[a] person who complies with a subpoena is immune from civil or criminal liability that might otherwise result from the act of turning over or providing information or records to the department." 22 M.R.S.A. § 4021(1)(A)(2) (1992 & Supp.1999–2000).

22. Section 4011 provides:

1. **Reasonable cause to suspect.** When, while acting in a professional capacity, an adult who is a ... psychologist ... knows or has reasonable cause to suspect that a child has been or is likely to be abused or neglected, that person shall immediately report or cause a report to be made to the department. 22 M.R.S.A. § 4011(1)(1992 & Supp.1999–2000).