STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-10-66
REM — KEN-10/19/2011

INTRALOT, INC.,
Petitioner

v.

ORDER ON RULE 80C APPEAL

ELLEN JANE SCHNEITER, et al.,
Respondents

Before the Court is Petitioner's appeal pursuant to M. R. Civ. P. 80C from a December 14, 2010 decision of the Bureau of General Services invalidating a contract awarded by the Bureau of Alcoholic Beverages and Lottery Operations to Petitioner.

## FACTS

On January 11, 2010, the State of Maine Bureau of Alcoholic Beverages and Lottery Operations (the Lottery) issued a detailed request for proposals (RFP), seeking bids from vendors interested in operating the Lottery's online gaming system. State law requires that contracts for goods and services for the State be awarded through a process of competitive bidding. 5 M.R.S.A § 1825-B.[1] The Lottery received bids from Intralot,

---

[1] The "Rules for the Purchase of Services and Awards" are administered by the Department of Administrative and Financial Services, Bureau of General Services, Division of Purchases and contain more detailed rules for competitive bidding. 18-554 C.M.R. ch. 110. Requests for proposals must contain "a clear definition (scope) of the

1

Scientific Games International (SGI), and a third party. The Lottery convened a five-member committee (the Evaluation Committee) to review the proposals and ultimately pick the winning bidder. All committee members were State employees with significant experiences in Lottery operations and/or procurement. The Lottery named Michael Boardman (Mr. Boardman) as chairman, and also designated Michael Huffenberger (Mr. Huffenberger), an experienced lottery consultant with the Battelle Memorial Institute, to assist the Evaluation Committee with their evaluation.

Upon receipt of the proposals, the Evaluation Committee proceeded as follows: (1) Members completed an individual initial review of each bidder's proposal, taking detailed, independent notes in the process. Some committee members used the "PMIQ" (plusses, minuses, questions, interesting) method of note taking suggested by Mr. Huffenberger; (2) The Evaluation Committee conducted an initial group review, considering notes taken by Mr. Huffenberger; (3) Committee members conducted site visits to each vendor's facilities with Mr. Huffenberger; (4) The Evaluation Committee began meeting as a group to discuss each section of each vendor's proposal. They made and retained group and individual notes containing their observations; (5) The Evaluation Committee then scored each bidder's proposal using two documents: The RFP itself and the "Technical Proposal Scoring Guidelines." A document designated "Joint Exhibit 14" in the record reflects the final consensus scoring.

Under Part 5 of the RFP, each proposal was to be scored on a scale of 2,000 total points, with 800 points allocated to price evaluation and 1,200 points allocated to technical evaluation. RFP § 5.6 indicates straightforwardly that the lowest cost bidder

project, the evaluation criteria and relative scoring weights to be applied, the proposal opening date and time, and agency contact person." *Id.* § 2(A)(i).

2

will automatically receive all 800 points possible for price evaluation. RFP § 5.4 identifies 9 technical criteria, and assigns a relative weight for each one. For instance, "facilities" is assigned 50 total possible points out of 1,200, while "software controls and data management" is assigned 225 possible points. This section indicates that "[t]he scoring approach will involve grading nine criteria, multiplying the grades by the weights available for each, and then summing up."

In addition to RFP § 5.4, the Evaluation Committee used a separate document entitled "Technical Proposal Scoring Guidelines" (the Guidelines) to determine the bidders' overall technical scores. The RFP itself did not contain the Guidelines;[2] rather, the Evaluation Committee used them to allot points in each of the nine technical categories during scoring. The Guidelines contain a two-step process: First, determining an initial award percentage of total available points in each category, and, second, making adjustments up or down based on additional facts. If a proposal was "compliant" with "no significant deficiencies," it was initially awarded 90% of available points for that particular technical category (i.e., 45/50 points for "facilities" or 202.5/225 points for "software controls and data management," from the examples noted above). If a proposal was compliant with one significant deficiency, it was initially awarded 80% of the available points in that category. If a proposal was compliant with two significant deficiencies, it was awarded 70% of the available points in that category. If a proposal was compliant with several significant deficiencies, it was initially awarded 60% of the

_____

[2] A draft RFP originally did contain the Guidelines, but they were removed in the final version. In an email from Betty Lamoreau at the Division of Purchases to Mr. Boardman, she wrote that she was "very concerned" about including the percentage system under the Guidelines because "it seems very likely to give rise to appeals, and the possible overturning of whatever award you make."

available points, and if a proposal was non-compliant or severely flawed in a particular category, it would be awarded less than 60% of the available points.

After the initial award percentage was assigned, the score may be adjusted using enhancements for positive features or reductions for minor deficiencies. Such adjustments, however, could only move the initial percentage up or down one level (i.e., up or down by 10%).

During the scoring process, the Evaluation Committee went through each section of each proposal using RFP § 5.4 and the Guidelines. Throughout, members took individual notes and the Evaluation Committee recorded its final results on a score sheet (Joint Exhibit 14). Joint Exhibit 14 lists, for each bidder individually, the nine technical categories and reveals the total score for each category. There is also a column for comments, but there is no reference to the Guidelines' system of initial percentages or point enhancements or reductions. Overall, Intralot received 1071.5 technical points and all 800 price points (because it was the lowest cost bidder). SGI received 1119 technical points and 747.76 price points. Thus, Intralot won the initial bid with 1871.5 total points, to SGI's 1866.76 total points.

On September 28, 2010, SGI filed a timely request for hearing of appeal with the Bureau of General Services.[3] Intralot intervened. SGI stated as grounds for its appeal that the contract award to Intralot constituted a violation of law, rested on irregularities creating a fundamental unfairness, and created an arbitrary or capricious award. *See* 18-554 C.M.R. ch. 120, § 3(2). More specifically, SGI argued: (1) Intralot failed to comply

---

[3] Under 5 M.R.S.A. § 1825-E, "[p]ersons aggrieved by an agency contract award decision . . . may request a hearing of appeal" with the Bureau of General Services. The Bureau, Division of Purchases, administers more detailed "Rules for Appeal of Contract and Grant Awards." 18-554 C.M.R. ch. 120.

with the mandatory requirements of the RFP, (2) the Evaluation Committee made multiple scoring errors, and (3) Intralot's bid contained material errors of fact inflating its score.

The Bureau of General Services convened an Appeal Panel, composed of three state civil service members. The Appeal Panel held a two-day, evidentiary hearing on November 22 and 23, 2010. In a decision dated December 14, 2010, the Appeal Panel invalidated the award to Intralot, stating that the Guidelines "constituted an irregularity that created a fundamental unfairness in that [they] failed to adequately distinguish between technically superior and technically inferior proposals," and that the contract was in violation of law because "the documentation provided by the Lottery fails to contain 'substantive information that supports the scoring' required by Section 3(A) of Chapter 110." (Decision 5.) This decision by the Appeal Panel constituted final agency action. On December 21, 2010, Intralot filed the present petition for review pursuant to M.R. Civ. P. 80C.

## STANDARD OF REVIEW

This Court must defer to a final agency action unless it "abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record." *Seider v. Bd. of Exam'rs of Psychologists,* 2000 ME 206, ¶ 8, 762 A.2d 551 (citation and quotation omitted).[4] "Judges may not substitute their judgment for that of

---

[4] Under the statutory iteration, the Superior Court may only reverse or modify an administrative decision if it is:
   (1) In violation of constitutional or statutory provisions;
   (2) In excess of the statutory authority of the agency;
   (3) Made upon unlawful procedure;

5

the agency merely because the evidence could give rise to more than one result." *Gulick v. Bd. of Envtl. Prot.,* 452 A.2d 1202, 1209 (Me. 1982) (citation omitted). Rather, the court will defer to administrative conclusions when based on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and quotation omitted); *see also Rangeley Crossroads Coal. v. Land Use Regulation Comm'n,* 2008 ME 115, ¶ 10, 955 A.2d 223 (explaining that the court will examine the record to determine whether the agency could "fairly and reasonably find the facts as it did") (citation and quotation omitted). In doing so, the court must accept the agency's interpretation of its own internal rules and regulations "unless the rules or regulations plainly compel a contrary result." *Rangeley Crossroads Coal.,* 2008 ME 115, ¶ 10, 955 A.2d 223 (citation omitted).

Where there have been two levels of administrative decision-making, the most recent decision will be the one subject to Superior Court review, if the most recent decision-maker had *de novo* capacity and/or the authority to conduct additional fact-finding. *See Concerned Citizens to Save Roxbury v. Bd. of Envtl. Prot.,* 2011 ME 39, ¶ 17, 15 A.3d 1263. Thus, here, we review the Appeal Panel's decision directly using the standard of review above.[5]

Note that the Appeal Panel was also bound by its own standard of review. In reviewing the Evaluation Committee's decision, the Appeal Panel had authority only to

---

        (4) Affected by bias or error of law;
        (5) Unsupported by substantial evidence on the whole record; or
        (6) Arbitrary or capricious or characterized by abuse of discretion.
5 M.R.S.A. § 11007(4)(C)

[5] 18-554 C.M.R. ch. 120 provides an Appeal Panel with comprehensive fact-finding authority.

validate or invalidate the decision upon finding clear and convincing evidence[6] that the decision contained (1) a violation of law, (2) irregularities creating fundamental unfairness, or (3) an arbitrary or capricious award. 18-554 C.M.R. ch. 120, §§ 3, 4. Thus, recognizing the two standards of review, to define this Court's task, we defer to the Appeal Panel's invalidation decision unless it "abused its discretion, committed an error of law, or made findings not supported by substantial evidence on the record" in finding by clear and convincing evidence that the Guidelines constituted an irregularity creating a fundamental unfairness or that the Evaluation Committee's lack of documentation was in violation of law.

## ANALYSIS

I.   *The Appeal Panel's decision to invalidate the contract to Intralot on the grounds that the technical Guidelines constituted an irregularity creating fundamental unfairness in that they failed to adequately distinguish between technically superior and technically inferior proposals was supported by the record below.*

The Appeal Panel may invalidate a contract upon a finding of "[i]rregularities creating fundamental unfairness." 18-554 C.M.R. ch. 120, § 3(2)(B). The Court notes again that it must give deference to the Appeal Panel's interpretation of the term, *Rangeley Crossroads Coal.*, 2008 ME 115, ¶ 10, 955 A.2d 223, and defers to agency conclusions when it could "fairly and reasonably find the facts as it did." *Id.*

Intralot argues that there was no factual basis in the record supporting the Appeal Panel's conclusion that the Guidelines constituted an irregularity creating fundamental

---

[6] "Clear and convincing evidence" means that the Appeal Panel must have been convinced that the truth of the assertions on appeal were highly probable, as opposed to more probable than not. *Pine Tree Legal Assistance, Inc. v. Dep't of Human Servs.*, 655 A.2d 1260, 1264 (Me. 1995) (citation omitted).

unfairness. (Br. of Pet. 12.) At the very least, however, the Appeal Panel based its conclusion on the Guidelines document itself as well as revealing hearing testimony in reaching its conclusion. This constitutes adequate record support.

The Appeal Panel found that the Guidelines "failed to allow the committee to distinguish between technically superior and technically inferior proposals." (Decision 6.) By awarding every compliant proposal without significant deficiency an initial score of 90%, then limiting any deviation to only 10% in either direction, the Guidelines put "80% of the available points 'out of play' at the outset." *Id.* Due to "the limited amount of leeway to adjust up and down from the initial award percentage, any significant distinctions in quality were reduced by the Guidelines to a handful of percentage points." *Id.* The Appeal Panel further noted that the Guidelines "forced the committee to treat every significant deficiency in the same manner regardless of whether the committee viewed the deficiencies as being of equal significance, and prevented the committee from going below an additional 10% reduction regardless of the number of minor deficiencies identified." *Id.* Mr. Michael Boardman, the Evaluation Committee chairman, testified to the inflexibility of the Guidelines in this respect as well. (Hearing Tr. 136.)

The Appeal Panel also considered hearing testimony from Mr. Boardman that all three bidders were initially awarded 90% of available points for each of the nine technical criteria with the exception of one. (Hearing Tr. 368; "Lottery Exhibit 8"[7].) It found this to be illustrative of the difficulty in making meaningful technical distinctions under the Guidelines. In short, the Appeal Panel found that the effective compression of technical

---

[7] Mr. Boardman prepared "Lottery Exhibit 8" in anticipation of the Appeal Panel hearing. (Hearing Tr. 381.) It lists the nine technical categories on the left, and the three bidders across the top. Out of the 27 resulting "initial award" determinations, 26 were 90%.

points did not provide "enough leeway to create a fair technical competition." (Decision 6.)

Based on the record, the Court concludes that there existed substantial evidence for the Appeal Panel to find, by clear and convincing evidence, that there was an irregularity creating fundamental unfairness under the Guidelines.[8] The Appeal Panel did not substitute its judgment for that of the Evaluation Committee. It determined only that the Guidelines caused an irregularity creating fundamental unfairness, and it did not undertake to decide the merits of the proposals.

II.     *The Appeal Panel's decision to invalidate the contract to Intralot on the grounds that the Evaluation Committee failed to adequately document final scoring of the proposals in violation of 18-554 C.M.R. ch. 110, § 3(A) was supported by the record below.*

Purchasing regulations require that a contracting agency "shall document the scoring," and "substantive information that supports the scoring." 18-554 C.M.R. ch. 110, § 3(A). Under its authority to invalidate a contract upon finding a violation of law, 18-554 C.M.R. Ch. 120, § 3(2)(A), the Appeal Panel found that the Evaluation Committee failed to adequately document information to support the final consensus scoring. (Decision 5.)

In opposition, Intralot points to an "extensive line of thorough documentation comprised of both individual and group analysis of each vendor's proposal" leading up to the final consensus scoring. (Br. of Pet. 17.) It is not disputed that the individual

---

[8] The Court refrains from fully addressing Intralot's follow-up argument that "where irregularities do not change award outcomes, they are not fundamentally unfair." It is enough to say, as SGI points out in its brief, that there is nothing to substantiate Intralot's speculation that the outcome would have been the same if another scoring process had been used.

committee members made extensive notes in the months leading up to the final consensus scoring. The documentation does not reveal, however, how these notes and comments translated into the final scores calculated by the Evaluation Committee. The Appeal Panel found that the only documentation in the record of the final consensus scoring was Joint Exhibit 14. (Decision 7.) Mr. Boardman testified that the individual notes leading up to and during the consensus scoring process did not provide any basis for the actual scores, but rather reflected the individual members' thoughts and opinions. (Hearing Tr. 81, 109, 432.)

Joint Exhibit 14 lists the nine technical categories and reveals the total number of points each bidder earned for that category. There is also a column for comments, but there is nothing to explain how the Guidelines' system of initial percentages and adjustments was applied. Hearing testimony and "Lottery Exhibit 8" revealed that SGI received a 90% initial award in all 9 technical categories, and Intralot received 90% in all categories but one, in which it received 80%. (Hearing Tr. 368.) However, both Joint Exhibit 14 and Mr. Boardman's testimony reveal that there was no effort to document the initial percentages awarded during consensus scoring *or* adjustments made under the Guidelines scheme. (Hearing Tr. 92, 111.) Thus, the Appeal Panel reasoned: "Given the testimony of Mr. Boardman about the application of the Guidelines by the committee, Joint Exhibit 14 fails to contain adequate substantive information to support the scoring." (Decision 7.) Assuming some application of the Guidelines by the Evaluation Committee, the Appeal Panel reasonably interpreted the regulation's documentation requirement to require the Evaluation Committee to *actually note* the initial percentage awarded, and *actually note* any adjustments through enhancements and reductions. As

10

such, the Court cannot say that the Appeal Panel abused its discretion or made any error of law or findings not supported by substantial evidence, in concluding that the Evaluation Committee's failure to adequately document was a violation of law.

*III.    The Appeal Panel based its decision on arguments properly presented for appeal.*

Intralot's final argument is that the Appeal Panel wrongly based its decision on arguments not properly presented in SGI's request for hearing of appeal. Relevant here, 18-554 C.M.R. ch. 120, §2(2) states: "A written request for appeal hearing must contain at a minimum the specific nature of the grievance, including the Appeal Criteria as defined in Section 3 . . . and must demonstrate the conditions that make the petitioner an aggrieved person."[9] At hearing, "the petitioner must present evidence to substantiate the specific grievances stated in the appeal." *Id.* § 3(4). The regulations, however, do not require that every fact or detailed argument eventually presented at the hearing must appear in the appeal request. Likewise, nothing prevents an agency decision from resting on facts and arguments that evolve from the time that the appeal is filed until final resolution. This makes sense given the short, 15-day time frame for filing an appeal, limited opportunity for discovery, and potential for new facts to emerge at hearing. Given these considerations, the Court is not prepared to narrowly limit the scope of the Appeal Panel's decision-making authority in the manner urged by Intralot.

As noted in the Facts, SGI advanced three arguments in its request for hearing of appeal: (1) Intralot failed to comply with the mandatory requirements of the RFP, (2) the Evaluation Committee made multiple scoring errors, and (3) Intralot's bid contained

---

[9] Section 3 contains the three grounds for appeal. *See* p. 7, *supra.*

material errors of fact inflating its score. The Appeal Panel rejected the first and third arguments.

Intralot contends, "SGI failed to include . . . any challenge to the Guidelines or the appropriateness or completeness of the Evaluation Committee's overall scoring documentation." (Br. of Pet. 21.) This is not accurate. Within SGI's second argument ("the Evaluation Committee made multiple scoring errors"), it first complained of a "failure to keep required scoring records." Intralot argues that SGI's appeal mainly points to deficiencies with *individual* documentation leading up to the final consensus scoring. SGI also pointed out, however, that there was no "document describing the assignment of percentage grades, adjustments, and then scoring weights, as called for in the RFP and Guidelines." (Request 12-13.) These arguments track the ultimate Appeal Panel finding that the Evaluation Committee failed to adequately document the substantive information in support of its application of the Guidelines during the final consensus scoring process.

Also within the second argument, SGI argued that the Evaluation Committee failed to apply the weighted grading methodology and that the technical scoring process resulted in an overweighting of price. Intralot points out that SGI focuses its argument on individual members' misapplication of the Guidelines during the period before final consensus scoring took place. However, any failure to follow the Guidelines very well supports the conclusion that application of the Guidelines was deficient as a whole. Additionally, in arguing that price was weighted too heavily, SGI noted in its request for hearing of appeal that no bidder received full points in any of the nine technical categories (unlike the price category, where Intralot received all 800 points), resulting in

a "significant compression of the Technical scoring range." (Request 14.) Thus, these arguments track the ultimate Appeal Panel finding that overall application of the Guidelines constituted an irregularity creating fundamental unfairness.

That the Appeal Panel ultimately rested on an evolved version of facts more fully developed during its hearing is not fatal to its decision, especially given the depth of hearing testimony that emerged after the appeal was filed. SGI's written closing argument effectively recognized the importance of hearing testimony on the documentation issue and altered its argument to that effect. Thus, the Court cannot conclude that the Appeal Panel decision rested on arguments not properly presented for appeal.

The entry will be:

The Court AFFIRMS the decision of the Appeals Panel dated December 14, 2010.

_10/19/11_
DATE

_____
SUPERIOR COURT JUSTICE

13

Date Filed __12/21/10__    Kennebec    Docket No. __AP-10-66__
                             County

Action __80(C) Appeal__

ELLEN JANE SCHEITER

## J. Murray

M.F. CHIP GAVIN

INTRALOT INC

APPEAL PANEL

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Michael Mahoney Esq.<br>100 Water St<br>Hallowell, Maine 04347<br><br>- Jeffrey A. Lipps, Esq.<br>  11360 Technology Circle<br>  Duluth GA 30097<br>        - Jay M. Lapine, Esq. | Charles Dingman, Esq. (Scientific Games)<br>45 Memorial Circle<br>Augusta Maine 04330<br>- William Laubenstein, AAG(Scheiter)<br>6 State House Station<br>Augusta Maine 04333-0006 |

| Date of Entry | |
|---|---|
| 12/22/10 | Petition for review of final agency action filed by Atty Mahoney on 12/21/10. |
| 12/22/10 | Petitioner Introlot, Inc's motion to Admit Jay M. Lapine Pro Hac Vice and Admit Jeffrey A. Lipps Pro Hac Vice filed by Atty Mahoney. |
| 12/30/10 | ORDER, Murphy, J. (12/29/10)<br>Motion to Admit Jeffrey A. Lipps, Pro Hac Vice, is GRANTED.<br>Copy to Atty Mahoney |
| 12/20/10 | ORDER, Murphy, J. (12/29/10)<br>Motion to Admit Jay M. Lapine, Pro Hac Vice, is GRANTED.<br>Copy to Atty Mahoney. |
| 1/10/11 | Appearance of Scientific Games International, Inc. and Statement of Position, filed. s/ Charles Dingman, Esq. |
| 1/12/11 | Respondents! Notice of Appearance and Statement of Position, filed. s/Laubenstein, AAG |
| 2/7/11 | Administrative Record, filed. s/Laubenstein, AAG (Vols. 1-6B) (in vault) (filed 2/3/11)<br>**NOTICE AND BRIEFING SCHEDULE ISSUED.**<br>Copies to attys. of record. |
| 2/8/11 | Joint Motion to Impound or Seal Portions of Record Subject to Protective Order and Incorporated Memorandum of Law, filed. s/Dingman, Esq.<br>Proposed Order, filed. (2/4/11) |
| 2/9/11 | ORDER, Murray, J.<br>**IT IS SO ORDERED.** |
| 3/4/11 | Certified Supplemental Record, filed. s/Laubenstein, AAG (in vault) |
| 3/14/11 | Petitioner's Rule 80(C) Brief, filed. s/Mahoney, Esq. |
| | Addendum to Petitioner's Rule 80(C) Brief |

| Date of Entry | Docket No. _____ |
|---|---|
| 4/13/11 | Brief of Party-in-Interest Scientific Games International, Inc. filed. s/Dingman, Esq.<br>Addendum to Brief of Party-in-Interest Scientific Games International, Inc., filed. s/Dingham, Esq. |
| 4/14/11 | Respondent's Brief, filed. s/Laubenstein, AAG |
| 4/27/11 | Petitioner's Rule 80(C) Reply Brief, filed. s/Mahoney, Esq. |
|  | Notice of setting for __7/7/11__<br>sent to attorneys of record. |
| 7/13/11 | Hearing held with the Hon. Justice Robert Murray, presiding. Jeffrey Lipps, Esq. for the petitioner. William Laubenstein, AAG and Charles Dingman, Esq. for the Respondent. (7/7/11) Tape 1433 Index 430-2405 Oral arguments made to the court. Court to take matter under advisement. |
| 10/20/11 | ORDER ON RULE 80C APPEAL, Murray, J. (10/19/11)<br>The Court AFFIRMS the decision of the Appeals Panel dated December 14, 2010.<br>Copies to attys. of record. |
| 12/22/11 | Copy to repositories. |