STATE OF MAINE                                      SUPERIOR COURT
CUMBERLAND, ss.                                     Civil Action
                                                    Docket No. AP-23-12

CHLOE MONSEN,                          )
                                       )
        Petitioner,                    )
                                       )
v.                                     )        **MEMORANDUM OF DECISION AND**
                                       )        **ORDER ON RULE 80C APPEAL**
                                       )
STATE OF MAINE BUREAU OF               )                    REC'D CUMB CLERKS OFC
MOTOR VEHICLES,                        )                    JAN 5 '24 PM3:54
                                       )
        Respondent.                    )

Petitioner, Chloe Monsen, appeals from the decision of the Maine Bureau

of Motor Vehicles ("BMV") to suspend her license to operate a motor vehicle

following an administrative hearing on February 13, 2023. The Secretary of State

suspended Monsen's license based on a report from the Brunswick Police

Department that Monsen had operated a motor vehicle with an excessive alcohol

level on October 22, 2022 and Monsen timely appealed that decision. At the

hearing the BMV took the testimony of Officer Michaud of the Brunswick Police

Department and Monsen.

The record establishes the following relevant background: on the evening

of October 22, 2022, Officer Paige Michaud of the Brunswick Police Department

was dispatched to the area of Portland Pie Co. located at 92 Maine Street for a

report of a female slumped over the wheel of a silver 2007 Toyota Rav4. (R. Tab

5, Brunswick Police Department Narrative for Patrol Officer Paige L. Michaud, at

1.) Officer Michaud arrived on the scene and located the vehicle parked in front

of the Gelato Fiasco with the lights of the vehicle illuminated. (*Id.*) When Officer

Michaud approached the vehicle, she observed a female who appeared to be unconscious in the driver seat. (*Id.*) When Officer Michaud knocked on the window, the woman did not respond. (*Id.*) Officer Michaud opened the door and the woman woke up when Officer Michaud touched her shoulder. (*Id.*) Officer Michaud recognized a strong odor of intoxicating liquor coming from inside the vehicle and she observed that the woman's pupils were unusually large and unresponsive to light and her eyes appeared glossy and red. (*Id.*)

Officer Michaud asked the woman what was going on and the woman just looked at her. (*Id.*) When asked her name, the woman mumbled that she did not know. (*Id.*) Officer Michaud asked where she was coming from and the woman said "Bath," and when Officer Michaud asked where she was headed, she said "home." (*Id.*) Upon being asked for identification, the woman produced a Maine license that identified her as Chloe Monsen. (*Id.*)

Officer Michaud asked Monsen if there was a reason she was parked there and she said no. (*Id.*) Monsen told Officer Michaud that she had dinner with her mother and got dropped off in Bath before driving to the parking spot. (*Id.*) Upon being asked how much she had to drink, Monsen stated she had two glasses of wine. (*Id.*) Monsen reported that she did not have any alcohol in the vehicle with her, she hadn't had anything to drink since she had parked, and she had only been parked for a few minutes. (*Id.*) Officer Michaud observed a "thick slur" in Monsen's speech. (*Id.*)

Officer Michaud performed field sobriety tests and observed six clues of intoxication on the horizontal gaze nystagmus test, seven clues on the walk and

turn test, and four clues on the one leg stand test. (*Id.* at 1-3.) Monsen was able to recite the requested segment of the alphabet without singing correctly. (*Id.* at 3.) Officer Michaud then placed Monsen under arrest for Operating Under the Influence. (*Id.*) Monsen resisted getting into the rear of the cruiser and had to be placed there by multiple officers. (*Id.*) Monsen stated to the officers multiple times that they could not tow her vehicle as she had to drive home. (*Id.*)

At the Brunswick Police Department, Officer Michaud checked Monsen's mouth for any cuts, blood or foreign objects but did not locate any. (*Id.*) Monsen then provided two breath samples that showed a blood alcohol content of 0.24 grams of alcohol per 210 liters of breath. (*Id.*) Monsen stated again at the station that she needed her vehicle as she was on her way to go pick up her son. (*Id.*) Officer Michaud's testimony at the administrative hearing was consistent with the narrative of her report.

At the administrative hearing, Monsen testified that on the evening of October 22, 2022, she had been on a date at Little Tokyo in Brunswick and then she and her date went to Bolos and that she had a glass of wine at each establishment. (R. Tab 4, Administrative Hearing Transcript, at 9-12.) Monsen testified that she believes she and her date were drugged with Rohypnol or some sort of mind-altering drug and she maintains that she only had two glasses of wine. (*Id.* at 8-9.) The hearing examiner allowed Monsen to read a written statement from her date[1] that corroborates that she had two glasses of wine and

---

[1] The hearing examiner explained to Monsen that she would likely accord less weight to the written statement of her date because he was not present to be cross-examined at the hearing. (R. Tab 4, Administrative Hearing Transcript, at 9.)

3

he had three light beers but they both became unusually intoxicated and he also believes they were drugged that night. (*Id.* at 8-11.)

Monsen testified that after she and her date left Bolos she called her mother to ask her for a ride. (*Id.* at 11.) She further testified that her mother was unable to pick her up because she was watching Monsen's son, who was sleeping at the time, but that her mother was going to call a friend to come pick her up. (*Id.* at 11-12.) Her mother instructed her to turn her lights on to help the friend identify the car. (*Id.*) Monsen testified that she did not seek any medical treatment for the drugging or report the incident to the police. (*Id.* at 13-14.) Monsen stated that she believed her inability to recall her name was indicative of someone who had been drugged. (*Id.* at 15.) Monsen testified that she was confused by the statements she made about having dinner with her mother and being dropped off in Bath because they were not true and the only way she could explain it was that she was not in her right mind. (*Id.* at 16.)

Monsen testified that she always has a ZYN nicotine pouch in her mouth and that, after she left the station, she pulled one out from behind her wisdom tooth. (*Id.* at 17.) She testified to her belief that she had the ZYN pouch in her mouth during the breath test and that if would have affected the breathalyzer result. (*Id.* at 17-18.) Monsen also argued at the hearing that the officer did not report on seeing the keys in the ignition. (*Id.* at 12.)

In response, Officer Michaud testified that her breath content amount of .24 indicates a significant amount of alcohol, more than two glasses of wine, and two glasses of wine combined with "roofies" would not produce such a result. (*Id.*

4

at 19.) Officer Michaud testified that she did perform a mouth check before administering the test and did not find a ZYN pouch. (*Id.*) She further testified that Monsen stated on multiple occasions during the encounter that she needed to pick up her son, who was at his father's house. (*Id.*)

The Maine Administrative Procedures Act (APA) and Maine Rule of Civil Procedure 80C provide for appeals to Superior Court from decisions made by state agencies. 5 M.R.S. §§ 11001-08. In Rule 80C appeals, the court examines whether the decision was "in violation of constitutional or statutory provisions;" "[i]n excess of the statutory authority of the agency;" "[m]ade upon unlawful procedure;" "[a]ffected by bias or error of law;" "[u]nsupported by substantial evidence on the whole record;" or "[a]rbitrary or capricious or characterized by abuse of discretion." 5 M.R.S. § 11007(4)(C)(1)-(6).

Here, Monsen argues that the officer did not observe her keys in the ignition and that the ZYN pouch affected the breath results. This argument amounts to an attack on the evidence. 5 M.R.S. § 11007(4)(C)(5). "Upon review of an agency's findings of fact we must examine the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did." *Doane v. HHS*, 2021 ME 28, ¶ 38, 250 A.3d 1101 (quoting *Friends of Lincoln Lakes v. Bd. of Env't Prot.*, 2010 ME 18, ¶ 13, 989 A.2d 1128). In conducting such a review, we "do[] not substitute [our] judgment for that of an agency and must affirm findings of fact if they are supported by substantial evidence in the record." *Id.* (quoting *International Paper Co. v. Board of Envtl. Protection*, 1999 ME 135, ¶ 29, 737 A.2d 1047).

5

A court will not reverse an agency decision merely in the face of inconsistent evidence. *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551. "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Stein v. Me. Crim. Justice Acad.*, 2014 ME 82, ¶ 11, 96 A.3d 612 (citing Seider v. Bd. of Exam'rs of Psychologists, 2000 ME 206, P 9, 762 A.2d 551). As the petitioner, Monsen bears the burden of proof to demonstrate that no competent evidence supports the Bureau's decision. *Id.*

Here, the decision of the Bureau by and through hearing officer Smith was supported by competent evidence on the record. The factual findings were supported by Officer Michaud's testimony and report, and the breath alcohol test report. Although Monsen testified that she did not drive and argues that the keys were not found in the ignition, this testimony conflicts with what she told Officer Michaud on the scene that she had just driven from Bath and had only been parked for a few minutes. The hearing officer, as the fact finder, was entitled to give more weight to Officer Michaud's contemporaneous report than to Monsen's after-the-fact explanations. As to the presence of the ZYN pouch, the hearing officer appears to have found Officer Michaud's testimony more credible on this point and even Monsen does not dispute that she was profoundly intoxicated on the night of the arrest. This evidence supports a finding that Officer Michaud had probable cause to believe Monsen had operated a vehicle under the influence in violation of 29-A M.R.S. 2411, and that Monsen, in fact, had operated a vehicle

6

under the influence in violation of the same. Monsen does not carry her burden of proof to show that no competent evidence supported the Bureau's decision.

Accordingly it is hereby ordered and the entry is: "Appeal DENIED. The decision by the Bureau of Motor Vehicles in this case is AFFIRMED."

The clerk may enter this Memorandum of Decision and Order on Rule 80C Appeal on the docket by reference pursuant to M.R. Civ. P. 79(a).

SO ORDERED

Dated: January 5, 2024

Deborah P. Cashman
Justice, Superior Court

Entered on the Docket: 01/08/2024

Petitioner-Jason A MacLean, Esq.
Respondent-Donald Macomber, AAG

7