STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, ss                            CIVIL ACTION
                                        DOCKET NO. AP-11-27
NANCY ROCHAT,                           D H
        Petitioner

        v.                              DECISION ON REVIEW

MAINE DEPARTMENT OF
HEALTH & HUMAN SERVICES


This matter is before the Court on guardian Nancy Rochat's 80C appeal

from the Department of Health and Human Services' denial of Jason Day's

request for certain state benefits.

The facts are mainly undisputed. Between the ages of 7 and 18, Jason Day

(Jason) was in the custody of the Department of Health and Human Services

(DHHS) as a result of a child protection proceeding. Jason has received a

number of psychological and other diagnoses, including most recently "PSTD,

Anxiety Disorder, and Reading Disorder." Jason has lived in multiple residential

settings, including, most recently, a group home in Gorham, Maine run by Port

Resources. Port Resources provided housing, supervision, structure and therapy

to Jason.

Jason turned 18 on August 14, 2010. Because he was "aging out of

children's services," Jason applied to DHHS for retardation services and autism

services provided for in Chapters 5 and 6 of Maine Revised Statutes Title 34-B.

DHHS initiated an evaluation process to determine whether Jason was eligible

for the services requested. Joann Sica, the DHHS intake worker on Jason's case,

communicated with staff at Port Resources, including Sara Asch, a counselor

there, to facilitate the application process. Port Resources staff arranged for the

1

transmission of information to DHHS and transported Jason to his psychological evaluation.

By letter dated November 16, 2010, DHHS notified Jason in writing that his request for services was denied because he was too high functioning. The letter clearly stated that Jason had 60 days to file an appeal with DHHS. In dispute here, DHHS regulation 14-197 C.M.R. ch. 3, § 3.3 requires that "[i]n the absence of anyone acting on behalf of the applicant," the applicant shall receive both written and verbal notice of the denial, and the 60-day appeals period does not begin until both have been completed. Jason was not informed verbally of the denial. DHHS also sent copies of the written decision to Sara Asch of Port Resources, Brandi Bourgoin, a DHHS caseworker, and Arthur Clum, an advocate with the DHHS Office of Advocacy. Nancy Rochat (Rochat) was not appointed as Jason's temporary legal guardian until April 22, 2011. Thus, he did not have a legal guardian at the time of the denial or during the 60-day appeals period.

On March 10, 2011, advocate Arthur Clum filed with DHHS on Jason's behalf a request for informal review of the November 2010 decision. By letter of March 21, 2011, Margaret Rode of DHHS denied Clum's request, reasoning that it was made beyond the 60-day appeals period. Her letter implies that no verbal notice was required because the denial was sent to Port Resources, which was "acting on behalf of the applicant." On May 13, 2011, after becoming Jason's temporary legal guardian, Rochat filed the present 80C appeal on his behalf.

Services available to individuals with mental retardation or autism are provided for in various sections within 34-B M.R.S.A. §§ 5001-5610. The procedures for requesting these benefits are contained in §§ 5467-5469 and the process for appealing a denial of benefits is contained in DHHS regulations.

2

Relevant here, 14-197 C.M.R. ch. 3, § 3.3 provides that whenever DHHS issues a denial,

> the applicant, the applicant's legal guardian, or anyone acting on his/her behalf, shall be advised by the regional office, in writing, of such a determination and of his/her right to appeal . . . **In the absence of anyone acting on behalf of the applicant, the applicant shall be notified, both verbally and in writing,** of the ineligibility determination . . .
>
> The applicant, the applicant's legal guardian or anyone acting on behalf of the applicant, may request a review of the decision . . . The written request shall be submitted within sixty (60) calendar days of the date of receipt of the written determination . . . **In the absence of anyone acting on behalf of the applicant, the applicant shall be notified, both verbally and in writing,** and the sixty (60) day timeframe shall begin to run on the date when both forms of notification have been completed.

(emphasis added). Thus, the issue here is whether anyone was acting "on behalf of" Jason on November 16, 2010, and, in turn, whether DHHS was required to provide him with verbal notice of the denial.

This Court must defer to a final agency action unless it "abused its discretion, committed an error of law, or made findings not supported by substantial evidence on the record." *Seider v. Bd. of Examiners of Psychologists*, 2000 ME 206, ¶ 8, 762 A.2d 551.[1]

In interpreting agency regulations, the court must look to the plain meaning of the language used in the regulation. *Smith v. Central Maine Power Co.*, 2010 ME 9, ¶ 18, 988 A.2d 968. Beyond the plain meaning, the court must

---

[1] Congruently, under 5 M.R.S.A. § 11007(4)(C), the Superior Court may only reverse or modify an administrative decision if it is:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Affected by bias or error of law;
> (5) Unsupported by substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion.

3

"generally defer to an administrative agency's own interpretation unless the statute or regulation plainly compels a different interpretation." *Id.* When a regulation is ambiguous, the court will nevertheless defer to the agency's interpretation "as long as [it] is a reasonable one." *State v. McCurdy*, 2010 ME 137, ¶15, 10 A.3d 686. However, an ambiguous statute or regulation may be void for vagueness if it "forces people of general intelligence to guess at its meaning, leaving them without assurance that their behavior complies with legal requirements and forces courts to be uncertain in their interpretation of the law." *Id.* ¶ 16 (citation and quotations omitted).[2]

In this case, the plain language requires verbal notice to be given "in the absence of anyone acting on behalf of the applicant." As an initial matter, this language is ambiguous in that it is subject to more than one interpretation. It could be interpreted to mean that verbal notice is required only "in the absence of anyone **able to act** on behalf of the applicant," or, rather, "in the absence of anyone **under some duty to act** on behalf of the applicant." Presumably, DHHS takes the former position, because Port Resources had the ability, but not an obligation, to act under the regulatory scheme.

Rochat, as Jason's guardian, argues that DHHS erred as a matter of law in assuming that Port Resources was acting on Jason's behalf at the time of the denial. First, Rochat explains that the purpose of the statutes and regulations in question is to broaden the rights of the cognitively impaired. "By enacting a comprehensive system of services for persons with mental retardation in 34-B M.R.S.A § 5001 et seq., the Legislature surely intended that DHHS should make

---

[2] Rochat does not offer a void for vagueness argument and the Court decides the case without it.

4

such services available to all intended beneficiaries." More specifically, she points out that 14-197 C.M.R. ch. 3, § 3.3 is meant to expand the legal rights of the cognitively impaired by allowing "anyone" acting on the applicant's behalf to file the appeal. Furthermore, "we can assume that the point of [the verbal notice provision] is to facilitate [filing an appeal] by providing added emphasis of the importance of the decision and by insuring that a person of limited literacy has actual notice of the agency's action."

Given these objectives, Rochat next maintains that DHHS's interpretation conflicts with the statutory and regulatory purpose by substantially foreclosing the opportunity to appeal. Rochat further explains, "there is nothing in the record that suggests that Port Resources intended to act on [Jason's] behalf with respect to the application for services or the filing of an appeal." She points out that, while Port Resources provided Jason with a support network, it was not in the business of providing legal advocacy and there is nothing to suggest that it understood or accepted such a role. Rochat also points out that the fact that three separate parties were notified of the denial creates a potentially confusing scenario where each looks to the others to take action.

Considering the regulatory objective of maximizing the applicant's opportunity for appeal, Rochat maintains, "the most reasonable interpretation of the regulation is that no one was acting on Jason Day's behalf with respect to an appeal." Thus, she argues that DHHS was required to provide him with verbal notice, and because it has not yet done so, the period for appeal is still open. Rochat further contends that principles of equitable tolling and reasonable accommodation under the Americans with Disabilities Act inform the analysis.

5

DHHS, conversely, argues that Port Resources was acting on Jason's behalf. "Neither legal authority to act, nor a formal declaration by a party that it intends to act on behalf of an applicant, is required by the rule, and the rule nowhere requires any writing or form to demonstrate authority or intent." Rather, the regulation entrusts DHHS to make the judgment that a provider of services "presumably has a relationship and a commitment to the best interests of the consumer, and so may be in a good position to assist the consumer in deciding whether to appeal." DHHS points out that Port Resources, designated as the party acting on Jason's behalf, provided an array of support services to Jason and was apprised of, and involved in, the application process. *Id.* Thus, it did not need to provide him with verbal notice, and Arthur Clum's March 2011 appeal was untimely as it fell beyond the 60-day deadline.

Although this Court will generally defer to the agency's interpretation of its rules, in this case the regulatory scheme as a whole "plainly compels a different" result. *Smith*, 2010 ME 9, ¶ 18, 988 A.2d 968. As Rochat points out, it can assume that the purpose of allowing "the applicant, the applicant's legal guardian or anyone acting on behalf of the applicant" to request an appeal is to maximize the opportunity for applicants to exercise their legal rights. Similarly, it can assume that the purpose of the verbal notice requirement is to ensure that applicants, especially those like Jason with limited literacy skills, receive actual notice of their legal right to appeal. [3]

Conversely, the interpretation advanced by DHHS has the *opposite* effect, by *limiting* an applicant's ability to assert his legal right to appeal in certain circumstances. The reason for this is that any obligation to assert or even

---

[3] And given those limitations, the ability to ask questions.

6

consider the applicant's legal rights can be illusory to the person "acting on [his] behalf." In a worst-case yet practical scenario, an applicant may be unable to understand the written notice, and the individual "acting on [his] behalf" will simply choose not to consider the right to appeal; this results in a situation where the applicant receives no actual notice and no opportunity to assert his legal rights.[4] Thus, this interpretation plainly conflicts with the purpose of the regulatory scheme. Rather than safeguard the rights of the mentally disadvantaged, it deprives them of the benefits of an otherwise protective regulatory framework.

This worst-case result is not unlike what happened here. Port Resources had acted on Jason's behalf on day-to-day matters in the past, but there is no evidence to suggest that it was affirmatively undertaking to act on his behalf during the time in question and with regards to his appeal. Sara Asch, to whom DHHS also sent the denial letter, was a counselor at Port Resources and there is no evidence that she considered herself to be Jason's legal advocate. Additionally, a practical collective-action problem results from the fact that three adults were sent the notice of denial and none of them were obligated to legally act. The issue is further highlighted by the fact that Arthur Clum was the person to eventually file Jason's (late) appeal, while DHHS assumed in its denial that Port Resources was the one acting on his behalf. As Jason experienced here, an

---

[4] Rochat maintains that equitable tolling principles may inform resolution of the issue here. The Court notes that 14 M.R.S.A § 853, tolling statutory limitations periods during mental disability, does not extend to regulatory appeals deadlines as Rochat suggests it should. However, it is interesting to note that the Law Court has tolled both statutory limitations periods and regulatory agency deadlines in cases where notice requirements were not met. *See Freeport v. Greenlaw*, 602 A.2d 1156 (Me. 1992); *Sav. & Loan Ass'n. v. Tear*, 435 A.2d 1083 (Me. 1981).

applicant's rights can easily go unasserted and even unconsidered. Thus,

DHHS's decision to dismiss Jason's appeal as untimely was in error, as the

regulatory framework plainly compels a different result.[5]

The entry will be:

The petition for review is GRANTED; the right to appeal is

GRANTED; REMANDED to the Maine Department of Health & Human Services

for further proceedings.

January 12, 2012

JUSTICE, SUPERIOR COURT

---

[5] The Court declines to address Rochat's alternate theories of equitable tolling and federal ADA claims. It is unnecessary to do so and, further, it is unlikely that these claims are properly before the Court. Rochat does not separately assert these claims, but rather suggests that the Court use them as "reference points to inform its construction of the oral notice regulation."

8

| Date Filed | 5/13/11 | Kennebec | Docket No. | AP-11-27 |
| --- | --- | --- | --- | --- |

County

Action ___ Petition For Review ___
80C

J. Mills *recused*

# J. MARDEN

Nancy Rochat                          vs.          ME Dept of Health & Human Services

| Plaintiff's Attorney | Defendant's Attorney |
| --- | --- |
| Thomas H. Kelley, Esq.<br>88 Federal Street<br>PO Box 547<br>Portland, ME   04112 | Thomas C. Bradley, AAG<br>6 State House Station<br>Augusta, ME   04333-0006 |

| Date of Entry | |
| --- | --- |
| 5/18/11 | Petition For Review Of Administrative Action, filed 5/13/11.  s/Kelley, Esq |
| 5/2711 | Acceptance of Service, filed.  Service accepted by Thomas C. Bradley, AAG for Respondent. |
| 6/14/11 | Stipulated Record, filed. s/Bradley, AAG<br>**NOTICE AND BRIEFING SCHEDULE ISSUE:**<br>Copies to attys. of record |
| 7/28/11 | Brief of Petitioner, filed 7/25/11.  s/Kelley, Esq. |
| 8/23/11 | RESPONDENT'S BRIEF, FILED. S/SCHNEIDER, ESQ. |
| 9/9/11 | Petitioner's Reply Brief, filed 9/6/11.  s/Kelley, Esq. |

Notice of setting for ___ 11/7/11 @ 10:30 ___

sent to attorneys of record.

| 10/13/11 | Motion to Continue Hearing, filed. s/Bradley, AAG |
| 10/26/22 | ORDER, Marden, J.  (10/24/11)<br>HEREBY ORDERED that this case is continued.<br>Copies to attys. of record. |
| 12/13/11 | Oral arguments set for 12/27/11 at 1:00 p.m. |
| 12/27/11 | Hearing held with the Hon. Justice Donald Marden, presiding. Thomas Kelley, Esq. for the Petitioner and Thomas Bradley, AAG for the Respondent. Tape 1475 Index 878-1511<br>Oral arguments made to the court. Court to take matter under advisement. |
| 1/18/12 | DECISION ON REVIEW, Marden, J. (1/12/12)<br>The petition for review is GRANTED; the right to appeal is GRANTED; REMANDED to the maine department of Health & Human Services for further proceedings. |

| Date of Entry | Docket No. _____ |
|---|---|
| ------ | Copies to attys. of record.<br>Notice of removal of record mailed to attys. of record<br>Copies mailed to repositories |
| ------ | Copies to attys. of record.<br>Notice of removal of record mailed to attys. of record<br>Copies mailed to repositories |