STATE OF MAINE
CUMBERLAND, ss

HAROLD J. FRIEDMAN and
MARY MITCHELL FRIEDMAN,
        Petitioners

                v.

STATE OF MAINE, DEPARTMENT OF
ENVIRONMENTAL PROTECTION
        and
BAIRD MALLORY and
LEAH MALLORY,
        Respondents

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-13-004

JAW-Cum 10/30/2013

ORDER ON 80C APPEAL

3 0

This matter is before the Court on Petitioners' appeal of government agency
action under Rule 80C of the Maine Rules of Civil Procedure.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Friedmans and the Mallorys are neighbors who live on Surf Road in Cape
Elizabeth. (Compl. ¶¶ 1, 3.) In November 2012, the Friedmans contacted the Department
of Environmental Protection ("DEP") after the Mallorys began a construction project to
increase the size of their house. (R. Tab 25.) They complained that the project, because of
its proximity to the coastline, required a Natural Resources Protection Act ("NRPA")
permit. (R. Tab 25.) DEP conducted a site visit and informed the Mallorys that they
would need to apply for an after-the-fact permit so DEP could review the proposed
project. (R. Tab 20.) The Mallorys applied for an NRPA permit on November 26, 2012.
(R. Tab 1.)

The Mallorys applied for a permit under the Permit By Rule ("PBR") program,
which allows an applicant to proceed through an expedited permitting process for

activities that the Board of Environmental Protection has determined to have no significant impact on the environment. *See* 38 M.R.S.A. § 344(7). One of the activities eligible for a PBR is construction adjacent to a coastal wetland. 06-096 C.M.R. ch. 305, § 2(A). The PBR rules require an applicant to submit certain information to demonstrate eligibility for the permit. 06-096 C.M.R. ch. 305, § 2(B). To be eligible for a PBR, the applicant's proposed project must comply with local shoreland zoning requirements. 06-096 C.M.R. ch. 305, § 2(A)(5).

The Mallorys submitted their application to DEP on November 26, 2012. (R. Tab 1.) On December 10, 2012, DEP determined that the Mallorys' application was deficient because the proposed project violated a shoreland zoning ordinance. (R. Tab 10.) According to a memo from Mike Morse with DEP, the Mallorys' application violated the expansion limitations under 38 M.R.S.A. § 439-A.4 and Cape Elizabeth's zoning ordinance with the identical limitation. (R. Tab 11.) The statute provides:

> [A]ll new principal and accessory structures and substantial expansions of such structures within the shoreland zone as established by section 435 must meet the water setback requirements approved by the board, except functionally water-dependent uses. For purposes of this subsection, a substantial expansion of a building is an expansion that increases either the volume or floor area by 30% or more.

38 M.R.S.A. § 439-A.4. The parties do not dispute that the Mallorys' house is at least partially within the shoreland zone and does not meet the setback requirement. Mr. Morse concluded that, based on his calculations, the proposed expansion would increase the floor area by 44.6%, which is greater than the 30% limit in the statute. (R. Tab 11.)

After receiving the unfavorable decision, the Mallorys contacted Mr. Morse to respond to his memo. (R. Tab 12.) The Mallorys first offered to reduce the square footage of their proposal by eliminating plans for a loft and a deck. (R. Tab 12.) They also

2

explained that after a major roof renovation to the house in 2007, they lost the use of an attic that had been previously used for storage. (R. Tab 12.) If the attic space were added to the baseline square footage of the house, then the Mallorys would be allowed a greater expansion under the statute. Neither the Mallorys nor DEP informed the Friedmans of the new information about the attic, and the Friedmans were not provided any opportunity to submit additional evidence or respond to the information in the Mallorys' letter.

On December 20, 2012, Mr. Morse sent a letter to the Mallorys in which he included the attic space in his calculations. (R. Tab 4.) He reasoned:

> The proposed expansion will result in a total of ~6,461 square feet of floor area in the entire structure (including the loft space and rooftop deck). Applying the Town's assessed attic area of 400 square feet, the proposed expansion appears to still exceed the 30% floor area limitation by 142 square feet (32.8% expansion). However, considering that the assessed floor area is merely a visual estimate (approximated as a 33' x 12' area), it is reasonable to assume that the original floor area may have been slightly larger than this estimate and that the proposed expansion will fully comply with the 30% floor area limitation (note: a 33' x 16' area complies). Without any evidence to suggest otherwise, the Department has concluded that your proposed expansion complies fully with the 30% limitation.

(R. Tab 4.) Mr. Morse advised the Mallorys to resubmit their PBR application for review and approval. (R. Tab 4.) The Mallorys resubmitted their application, which DEP approved on December 21, 2012. (R. Tab 4.)

The Friedmans filed this 80C appeal on January 18, 2013, alleging that DEP erred in granting the Mallorys' PBR application. They have separately filed an 80B appeal of the Code Enforcement Officer's decision to issue a building permit for the same project. (R. Tab 27.) The Friedmans had requested that DEP stay its decision on the Mallorys' PBR application until their 80B challenge is decided.

3

## DISCUSSION

### 1. Standard of Review

The standard of review on an 80C appeal "is limited to whether the governmental agency abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record." *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 8, 762 A.2d 551. The Court must sustain the agency's decision "if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Id.* ¶ 9. The appealing party has the burden to "prove that no competent evidence supports the [agency's] decision." *Id.*

### 2. Individual NRPA Permit

The Friedmans first argue that the Mallorys are not entitled to an individualized NRPA permit. As the Friedmans concede, however, that issue is not before the Court because DEP determined that the PBR process applied. (Br. of Pet. 7 n.7.) The issue is therefore not ripe for review and the Court need not consider at this time whether the Mallorys would be entitled to an individual NRPA permit.

### 3. DEP's Refusal to Issue a Stay Pending Resolution of 80B Proceedings

The Friedmans requested that DEP stay its decision on the Mallorys' PBR application until their 80B appeal is resolved. The Friedmans argue that DEP's decision not to stay action on the PBR application pending resolution of their 80B appeal was arbitrary and capricious.

The decision to grant or deny a stay of proceedings is discretionary. *See Cutler Assocs., Inc. v. Merrill Trust Co.*, 395 A.2d 453, 456 (Me. 1978). The Friedmans can point to no authority that would entitle them to a stay. Moreover, the PBR process is

4

intended to expedite the permitting process for activities that DEP has already determined will not significantly affect the environment. Providing stays in PBR proceedings would run counter to the intent of the PBR system to efficiently approve permits for minor matters. The Court finds that DEP's decision not to stay the PBR process was not arbitrary or capricious.

4. *Ex Parte* Communications

Next the Friedmans argue that DEP violated their Due Process rights by communicating with the Mallorys without providing them notice or an opportunity to respond.

DEP rules provide that "[h]earings are discretionary unless otherwise provided by law." 06-096 C.M.R. ch. 2, § 7(B). Under the PBR process, an applicant need only notify DEP of its application. 38 M.R.S.A. § 344(7). There is no requirement that DEP notify any interested parties. *Id.* From DEP's perspective, PBRs are issued for activities that are categorically deemed not to have a great impact on the environment, and therefore, an adjudicatory hearing is not necessary.

The Friedmans cite to sections of the Administrative Procedure Act that deal with adjudicatory proceedings to support their claim of a procedural violation. 5 M.R.S.A. §§ 9051-9055. These provisions, however, only apply in a situation where a hearing is required by law. *See* 5 M.R.S.A. § 9052(1)-(2) (requiring notice only when a hearing is required by statute, regulation, or constitutional law). Nothing in the statute authorizing PBR review requires DEP to hold a hearing. Therefore, the APA's hearing sections do not apply to DEP's decision on a PBR application. Since notice and a hearing were not required in this case, there were no improper *ex parte* communications.

5

5. Shorland Zone

The Friedmans point to differences in language between the statutory method of calculating the shoreland zone and the method under Cape Elizabeth ordinances. They challenge DEP's conclusion that 15% of the Mallorys' house is not in the shoreland zone. Although the Friedmans point to different language in the ordinance and the statute, on closer inspection the definition of the shoreland zone is identical in both. *Compare* 38 M.R.S.A. § 435 (defining the zone as the area "within 250 feet of the upland edge of a coastal wetland") *with* Cape Elizabeth Zoning Ordinance § 19-6-11(A) (defining the area as land "within two hundred fifty (250) feet" of the "upland edge of a coastal wetland"). Thus, DEP did not need to consider using a different method of calculating the shoreland zone.

6. Substantial Evidence

The main thrust of the Friedmans' appeal is their argument that DEP's decision to issue the PBR is not supported by substantial evidence in the record. "In applying the 'substantial evidence' standard, [courts] do not weigh the merits of evidence; [they] determine whether there is any competent evidence in the record to support a finding." *Concerned Citizens to Save Roxbury v. Bd. of Envtl. Prot.*, 2011 ME 39, ¶ 24, 15 A.3d 1263. The issue is whether substantial evidence supported DEP's determination that the Mallorys' proposed expansion was not a "substantial expansion" under the relevant statute and zoning ordinance. "[A] substantial expansion of a building is an expansion that increases either the volume or floor area by 30% or more." 38 M.R.S.A. § 439-A.4. The relevant Cape Elizabeth zoning ordinance provides that a non-conforming structure that existed as of January 1, 1989, cannot be expanded by more than 30% during the

6

lifetime of the structure. Cape Elizabeth Zoning Ordinance § 19-4-4(B)(1)(a). Thus, DEP had to determine what the volume and floor area of the structure was as of January 1, 1989 and then calculate whether the proposed expansion would result in a volume or floor area 30% greater than that amount.[1]

Initially, Mr. Morse's calculations included a floor area estimate of 4,467 square feet for the house before the proposed expansion. (R. Tab 11.) Using this figure as a baseline, the proposed expansion would make the house more than 30% larger. (R. Tab 11.) After DEP denied the Mallorys' PBR, the Mallorys' attorney sent Mr. Morse an email, which included the following:

> When the Mallorys purchased the house in 2006, it had a gable roof, below which was an attic covering the entire width and length of the main house (excluding the "wings"). Mr. Mallory tells me that there was then a drop-down stairway to the attic similar to the one which is currently proposed on the plans.

(R. Tab 13.) The Mallorys' attorney went on to describe how Mr. Mallory replaced the roof of the house and, in doing so, eliminated the floor of the attic in 2007. (R. Tab 13.) "Thus, by the time Mr. Mallory finished reconstruction of the roof, he had eliminated several hundred sq. ft. of floor space that had existed before 1989." (R. Tab 13.)

Mr. Morse consulted the tax records to determine the size of the attic before Mr. Mallory reconstructed the roof. (R. Tab 4.) Cape Elizabeth tax records showed that the attic had an estimated floor space of 400 square feet "based on a visual estimate rather than an actual measurement (described as a typical method for assessing such attic spaces)." (R. Tab 4.) According to the Mallorys, however, the attic ran the entire length

---

[1] After DEP initially denied the PBR, the Mallorys submitted their architect's professional opinion with supporting calculations that the expansion did not increase the volume of the house by more than 30%. (R. Tab 18.) Thus, the Friedmans focus their challenge on the floor area calculation. To the extent the Friedmans challenge the volume calculations, the Court finds that DEP's decision was supported by substantial evidence.

7

and width of the main portion of the house, which would have given it a floor area of 891 square feet. (R. Tab 11, 13.) Mr. Morse weighed these two values and determined that "considering that the assessed floor area is merely a visual estimate (approximated as a 33' x 12' area), it is reasonable to assume that the original floor area may have been slightly larger than this estimate and that the proposed expansion will fully comply with the 30% floor area limitation (note: a 33' x 16' area complies)." (R. Tab 4.)

The Mallorys contend that Mr. Morse's conclusions are based on a lack of evidence and an assumption as opposed to substantial evidence in the record. Mr. Morse could have concluded, however, that, based on the letter from the Mallorys' attorney, the floor area of the previous attic was 891 square feet. Instead, he opted to compare the tax-assessed floor area of the attic with the Mallorys' claim. He then worked backwards to determine what size attic would allow the project to move forward. Since that number was only slightly larger than the tax-assessed size of the attic, he found that it was reasonable to assume the attic was large enough to approve the project without accepting the Mallorys' claim that the attic covered the entire main portion of the house. Thus, the evidence in the record is the letter from the Mallorys' attorney and the assumption was Mr. Morse's method of testing the evidence. Accordingly, the Court finds that Mr. Morse's decision was supported by substantial evidence in the record.

The entry is:

The Department of Environmental Protection's decision to issue a permit-by-rule to the Mallorys is AFFIRMED.

Dated: October 29, 2013

Joyce A. Wheeler
Justice, Superior Court

Friedmans-Martha Gaythwaite Esq
State DEP-Nancy Macirowski AAG
Mallorys-John Bannon Esq

8